*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-CF-1369

DARIUS BRISCOE, APPELLANT,

v.

UNITED STATES, APPELLEE.

03/29/2018

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeal from the Superior Court
of the District of Columbia
(CF3-8611-15)

(Hon. Milton C. Lee, Trial Judge)

(Submitted February 24, 2017                    Decided March 29, 2018)

*Donna L. Biderman* was on the brief for appellant.

*Channing D. Phillips*, United States Attorney at the time, and *Elizabeth Trosman*, *Nebiyu Feleke*, *Tamika Griffin*, and *Priya Naik*, Assistant United States Attorneys, were on the brief for appellee.

Before THOMPSON and MCLEESE, *Associate Judges*, and RUIZ, *Senior Judge*.

Opinion for the court by *Associate Judge* THOMPSON.

Concurring opinion by *Associate Judge* MCLEESE at page 31.

Separate Statement by *Associate Judge* THOMPSON at page 34.

Opinion by *Senior Judge* RUIZ dissenting in part at page 36.

THOMPSON, *Associate Judge*:  A jury convicted appellant Darius Briscoe of armed robbery, assault with a dangerous weapon ("ADW"), and two counts of possession of a firearm during a crime of violence ("PFCV").  Appellant asserts that the government violated Superior Court Criminal Procedure Rule 16 and his rights under *Brady v. Maryland*[1] by failing to obtain and produce the contents of a surveillance camera attached to an apartment building located on the street where the offenses occurred, and he argues that the government should have been sanctioned for that conduct.  He also argues that the trial court erred in assuming that it was required to impose the statutory five-year mandatory-minimum sentence for a "while armed" crime of violence and the same mandatory-minimum sentence for PFCV, and in failing to recognize that it could exercise sentencing discretion under the Youth Rehabilitation Act ("YRA").  Reviewing appellant's claims for plain error, we conclude that appellant is not entitled to relief.  Accordingly, we affirm.

**I.**

---

[1]  373 U.S. 83 (1963).

Trial in this case commenced on October 8, 2015. The evidence showed that on June 21, 2015, Troy Thomas was assaulted and robbed at gunpoint by a man he later identified from a photo array as appellant. Thomas had just stopped at a convenience store to bet on horse races. As he was leaving the store, he saw appellant approaching with a bicycle. As Thomas was walking home, appellant stopped him in an alleyway, pointed a handgun at him from approximately ten to fifteen feet away, and said, "I heard you been hitting them horses. Hand that shit up." Four other people then joined appellant in the alleyway, whereupon appellant ordered them to search Thomas's pockets. After the search, the group took Thomas's phone, wallet, identification cards, Metro transportation card, and sixty dollars in cash. Appellant then pulled the trigger of the handgun. When no shot fired, Thomas took off running.

Thomas, afraid to return home that night, fled to his girlfriend's home. The following morning, when he returned home, he found officers responding to a different incident on his street, informed one of them about the previous night's robbery, and described his assailant. The next day, Thomas saw appellant coming down his street on a scooter and called Detective Sean Crowley of the Metropolitan Police Department ("MPD") to report the sighting. After hearing a lookout broadcast over the radio, MPD Officer Caleb Bacon spotted appellant,

whom he recognized by name, on a scooter and chased him. Appellant got away, but Officer Bacon provided information as to appellant's identity to Detective Crowley, who prepared a nine-person photo array containing appellant's picture. From that array, Thomas identified appellant as the person with the gun who had robbed him.

The government's trial evidence included video surveillance footage from a camera located outside the convenience store.[2] Thomas identified appellant in the convenience store video footage. MPD Investigator Sean Rutter testified that he had spotted a surveillance camera in the rear of an apartment building that looked into the alley where the incident occurred. However, Investigator Rutter "was not able to make contact with the homeowner" and, therefore, never received any footage the camera may have contained. Rutter also testified that he was "not sure" whether the camera "was fake" and that in his experience, "half of the time," cameras are "put up for deterrence purposes" only and do not actually work.

---

[2] The trial court observed, in comments to counsel, that the video footage "doesn't show the actual event" but tended to corroborate Thomas's testimony that appellant was outside the store.

Appellant did not testify, but his trial counsel argued mistaken identity. Counsel told the jury that the man shown in the convenience store surveillance video looked like, but was not, appellant.

Citing *Brady* and Super. Ct. Crim. R. 16, appellant now asserts that "[t]he government did not preserve [the footage from the surveillance camera attached to the apartment building], and because of its failure, [he] was prejudiced," a circumstance that he contends warranted sanctions against the government. Appellant also argues that the sentence the trial court imposed was based on an "incorrect understanding of the law," because the YRA "supersedes the mandatory minimum in this case."

## II.

As to appellant's *Brady* and Rule 16 claims, the rule that guides our analysis is that where — as here — "defense counsel fails to move for the production of evidence and does not request the imposition of sanctions against the government for failing to preserve discoverable material, the trial court's failure to *sua sponte* impose a sanction will only be reversed upon a finding of plain error." *Sheffield v. United States*, 397 A.2d 963, 968 (D.C. 1979).

Where no objection was made during the sentencing proceeding, this court applies plain-error review to a claim that the trial court erroneously believed that the sentence it imposed was mandatory. *See Veney v. United States*, 738 A.2d 1185, 1198 (D.C. 1999). The plain error test requires that there "be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.'" *Johnson v. United States*, 520 U.S. 461, 466-67 (1997) (internal brackets omitted) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 467 (internal quotation marks and brackets omitted).

Our review of questions of statutory interpretation is *de novo*. *Peterson v. United States*, 997 A.2d 682, 683 (D.C. 2010).

**III.**

We can dispose of appellant's first claim summarily. To establish a *Brady* violation, an appellant must first show that the information the government failed to produce was in its possession; "[i]f the government does not possess the

requested information, there can be no *Brady* violation." *Guest v. United States*, 867 A.2d 208, 212 (D.C. 2005). "The *Brady* principle does not imply the government's duty to investigate — and come to know — information which the defendant would like to have but the government does not possess." *Id.* (internal brackets omitted) (quoting *Lewis v. United States*, 393 A.2d 109, 115 (D.C. 1978)). Rule 16 similarly requires the government to produce certain items "if the item is within the government's possession, custody, or control." Super. Ct. Crim. R. 16 (a)(1)(E). "If [the requested item was not ever within the government's possession], there can be no Rule 16 violation." *Myers v. United States*, 15 A.3d 688, 690 (D.C. 2011).

Here, appellant has failed to show that the government was ever in possession of any contents of the video camera attached to the apartment building. The only pertinent evidence in the record was the testimony of Investigator Rutter, who testified that he "was not able to make contact with the homeowner" to obtain any video footage the camera might have captured, that he did not even know whether the camera was "fake," and that in his experience, video surveillance cameras frequently do not work and are mounted solely for their deterrent effect.[3]

---

[3] Moreover, defense counsel acknowledged in his closing argument to the jury that "we don't know whether [the camera] was working or not."

Further, the government had no duty under the Due Process Clause or under Rule 16 to take steps to investigate and obtain any video footage the camera, which the government did not possess or control, might have contained. *See Guest*, 867 A.2d at 212; *cf. Koonce v. District of Columbia*, 111 A.3d 1009, 1016 (D.C. 2015) (stationhouse video of person arrested for DUI must be preserved under Rule 16). Accordingly, we have no basis for concluding that the government violated *Brady* or Rule 16 by not producing any evidence from that camera and, likewise, no basis for concluding that the trial court plainly erred by not sanctioning the government.[4]

## IV.

### A.

During the sentencing proceeding, defense counsel said that "[t]here are guidelines that are before the [c]ourt[,]" but urged the court to "consider the sentence under the [YRA]," telling the court that he hoped appellant would be

---

[4] Further, even if it is assumed *arguendo* that the video camera recorded the incident, "[w]e do not know whether the tape would have been exculpatory." *Robinson v. United States*, 825 A.2d 318, 325 (D.C. 2003). "There is no *Brady* violation absent a showing of materiality, *i.e.*," a showing "that the missing evidence 'would have made a different result reasonably probable.'" *Id.* (quoting *Farley v. United States*, 694 A.2d 887, 889 (D.C. 1997) (citations omitted)).

allowed "to have Your Honor sign an order of expungement should the [c]ourt go along the lines [counsel was] requesting." The prosecutor said that the government would "rest largely" on its Memorandum in Aid of Sentencing, which — citing appellant's "substantial criminal history" and asserting that his conduct was "only getting more violent" — recommended that appellant be sentenced to consecutive sentences of sixty months of imprisonment and three years of supervised release for his robbery while armed and PFCV convictions, and to a concurrent sentence of twenty-four months' imprisonment and three years of supervised release for the ADW conviction. The prosecutor told the court that the government "defer[red] to the [c]ourt" "in reference to the Youth Act."

Before announcing appellant's sentence, the court cited appellant's record of prior convictions (referring to "all . . . the other cases that [appellant] had") and also noted the "really hard impact" of appellant's offenses on victim Thomas. In addition, the court emphasized that it took a period of being locked up for appellant (who earned his GED while in jail awaiting trial and sentencing) to "apply [him]self." The court said that it would adhere to the voluntary sentencing guidelines with respect to "when consecutive sentencing is appropriate," noting that consecutive sentencing would be appropriate had there been multiple victims or offenses occurring at different times. The trial judge then stated the following:

> The sentencing is difficult in this case, in large part because there's a mandatory minimum attached to this because there is a firearm used. But . . . I don't see any value going above the mandatory minimum in this case. And in some respect maybe the mandatory minimum is a little too harsh but it is the mandatory minimum. It is what [the] city coun[cil] said is appropriate under the circumstances.

The court sentenced appellant to concurrent sentences of sixty months of imprisonment and three years of supervised release for his robbery while armed and PFCV convictions and imposed a concurrent sentence of thirty months' imprisonment and three years of supervised release for the ADW conviction. The court said that "[t]he sentence will be under the Youth Act so that [appellant would] have the ability if [he could] successfully complete all this to remove it from [his] record." The Judgment and Commitment Order states that the sentences were imposed under, and that appellant was to be "[c]ommitted pursuant to," D.C. Code § 24-903 (b), (c) (providing for "treatment and supervision pursuant to this subchapter up to the maximum penalty of imprisonment otherwise provided by law" if the court "determines that the youth offender will derive benefit from the provisions of this subchapter").

**B.**

Appellant reads the sentencing transcript to suggest that the trial court might have imposed a less "harsh" sentence had it understood that it was free to do so. Appellant contends that the court *was* free to do so and erred in assuming that it was compelled to impose the five-year mandatory-minimum sentence established by D.C. Code §§ 22-4502 (a)(1) and -4504 (b) (2012 Repl.) for his convictions of armed robbery and PFCV, respectively.

Although defense counsel urged the trial court to proceed under the YRA to make expungement possible, he never argued that the court had discretion not to impose the mandatory-minimum sentences under those statutes. Counsel's Memorandum in Aid of Sentencing simply sought "a lenient sentence pursuant to the [YRA]" and "the minimum permissible sentence pursuant to the [YRA]." Further, counsel told the court during the sentencing proceeding that "whether the [c]ourt gives him a [YRA] sentence or not[,]" he was "willing to accept the judgment of the [c]ourt."[5] Even though counsel had reviewed (and referred in his

---

[5] In neither his memorandum nor his argument during the sentencing proceeding did counsel urge the court to impose no sentence at all in favor of probation. He did suggest — to the contrary, at least arguably — that appellant

(continued…)

Memorandum in Aid of Sentencing to) the Presentence Report ("PSR"), and even though the PSR referred to the five-year mandatory-minimum sentences for robbery while armed and PFCV, appellant's Memorandum in Aid of Sentencing said nothing about whether those minimum sentences were applicable. And although appellant now argues that "[i]t was obvious at sentencing that the trial court was under the misimpression that it had to sentence [him] to the mandatory minimum," his counsel made no objection when the court said that sentencing was difficult "because there's a mandatory minimum attached to this because there is a firearm used." Counsel also did not object to imposition of the mandatory-minimum sentence even when, after announcing the sentence, the court said to him, "anything else?" Accordingly, our analysis is for plain error.

In support of his claim of error, appellant cites footnote 43 in *Green v. United States*, 974 A.2d 248 (D.C. 2009). That footnote accompanies a sentence in the text of the opinion that states that the court "remand[s] this case for re-sentencing." *Id.* at 262. The footnote explains that "Mr. Green requests, and the government does not oppose, a remand for re-sentencing." *Id.* at 262 n.43. The footnote further explains that the trial court "imposed mandatory minimum terms"

---

(…continued)

needed a "setting" ("He just needs a setting, perhaps a mentor if the [c]ourt can arrange that").

"at the government's request," but that "[i]n light of its review of the legislative history of the DCYRA, . . . 'the government . . . [now] accedes to appellant's claim that the five-year mandatory minimum terms required by D.C. Code §§ 22-4502 (a) and -4504 (b) do not have to be imposed when sentencing under the DCYRA.'" *Id.* at 262 & n.43 (brackets in the original).[6]  The government now asserts that "[o]n further reflection, we have concluded that our prior concession [in *Green*] was incorrect."

In *Green*, this court remanded for resentencing without giving any specific instructions to the trial court. At most, this court "merely accepted"[7] the government's "acced[ing]" to Green's claim that the five-year mandatory minimum terms required by D.C. Code §§ 22-4502 (a) and -4504 (b) do not have to be imposed when the trial court imposes a sentence under the YRA, and did not

---

[6]  Green argued to the trial court that the five-year mandatory-minimum terms under §§ 22-4502 (a) and -4504 (b) did not apply to sentences imposed under the YRA, thus (unlike appellant in this case) preserving the issue. In its brief in Green's direct appeal, although "continu[ing] to believe that an argument c[ould] be made that the mandatory minimum terms in [the while-armed and PFCV statutes] must be applied when imposing a period of incarceration under the [YRA]," the government asserted that there was "sufficient ambiguity" on the issue "as to render application of the rule of lenity appropriate" and stated that it would not oppose Green's request for a remand for resentencing.

[7]  *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1234-35 (10th Cir. 2009).

independently analyze the issue. Given these circumstances, we agree with the government that we are not bound by the government's "concession" in *Green* with respect to an issue that was not actually decided by the court. *See Daly v. District of Columbia Dep't of Emp't Servs.*, 121 A.3d 1257, 1262 (D.C. 2015) (explaining that the interpretation the court applied in an earlier case was "not binding precedent, given the [petitioners'] concession in that case");[8] *United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc.*, 207 F.3d 1193, 1199-1200 (10th Cir. 2000) (declining to accord precedential weight to a panel decision that assumed, but did not explicitly decide, that the court had jurisdiction, even though the jurisdictional issue was necessary to the holding in that prior case; stating, "[i]n order for a decision to be given stare decisis effect with respect to a particular issue, that issue must have been actually decided by the court" (quoting 18 James Wm. Moore, et al., Moore's Federal Practice § 134.04[5] (3d ed. 1999))). *Green* "stands for the propositions it established[,] not for the propositions conceded by the parties." *In re Coats*, 267 P.3d 324, 332 (Wash. 2011) (en banc). For that reason, and because "the proper administration of the criminal law cannot

---

[8] In light of *Daly*, decided in August 2015, it would not have been plain to the trial court at sentencing in this case on December 18, 2015, that the remand for resentencing in *Green*, based on the government's concession about whether the while-armed and PFCV mandatory-minimum sentences applied, represented binding precedent.

be left merely to the stipulation of parties," *Young v. United States*, 315 U.S. 257, 259 (1942), we analyze the issue afresh.

We have said that we cannot find error that is "obvious or readily apparent" — i.e., plain — "where this court has not spoken on the subject." *Cartledge v. United States*, 100 A.3d 147, 150 (D.C. 2014) (internal quotation marks omitted). There could, however, be situations where a statute is so clear on its face that a decision of this court is unnecessary to make it "obvious" what the correct interpretation is. And, in appropriate contexts, our review for plain error entails considering whether there is "authority that appears to be to the contrary[.]" *Alexander v. United States*, 116 A.3d 444, 449 n.5 (D.C. 2015).[9] Here, in light of the government's previous concession, based upon its "review of the legislative history" of the YRA, that the five-year mandatory-minimum terms required by §§ 22-4502 (a) and -4504 (b) "do not have to be imposed" when the Superior Court sentences a youth offender under the YRA, *Green*, 974 A.2d at 262 n.43, we deem

---

[9] *Cf. United States v. Cheal*, 389 F.3d 35, 49 (1st Cir. 2004) (considering legislative history of relevant statute in analyzing claim under plain-error standard); *Marcia V. v. Office of Children's Servs.*, 201 P.3d 496, 503-05 (Alaska 2009) (considering whether the claim of error had support in legislative history, but concluding that the argument for error was not strong enough to reverse under the plain-error standard of review).

it appropriate to analyze any statutory language or legislative history that may compel that conclusion (or the contrary conclusion the government now urges).

The YRA provides, in pertinent part, that "[i]f the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation." D.C. Code § 24-903 (a)(1) (2012 Repl.).[10] The YRA further provides that "[i]f the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may sentence the youth offender for treatment and supervision pursuant to this subchapter up to the maximum penalty of imprisonment otherwise provided by law." D.C. Code § 24-903 (b). D.C. Code § 24-903 (f) explains that § 24-903 "provide[s] sentencing alternatives in addition to the options already available to the court."

---

[10] The YRA defines a youth offender as "a person less than 22 years old convicted of a crime other than murder, first degree murder that constitutes an act of terrorism, and second degree murder that constitutes an act of terrorism." D.C. Code § 24-901 (a)(6) (2012 Repl.). The record indicates that appellant was still under twenty-two years of age at the time of sentencing.

In contrast, D.C. Code § 22-4502 (which for convenience we will call the "while-armed statute") provides in pertinent part that "[a]ny person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with . . . any pistol or other firearm . . . shall . . . be imprisoned for a mandatory-minimum term of not less than 5 years[.]" D.C. Code §§ 22-4502 (a), (a)(1).[11] Further, D.C. Code § 22-4502 (c) provides that a defendant found to have been "armed with any pistol or firearm" and sentenced under § 22-4502 (a)(1) "shall not be released, granted probation, or granted suspension of sentence, prior to serving [such] mandatory-minimum sentence."[12]

The PFCV statute, enacted in 1990 through D.C. Law 8-120 (*see* 37 D.C. Reg. 24), similarly provides in pertinent part that upon conviction of possession of a firearm or imitation firearm while committing a crime of violence, a defendant

---

[11] The term "crime of violence" includes robbery. *See* D.C. Code § 22-4501 (1) (2012 Repl.) (incorporating the definition set forth in D.C. Code § 23-1331 (4) (2012 Repl.)).

[12] The mandatory-minimum provisions of § 22-4502 were enacted through a voter initiative effective June 7, 1983. *See Abrams v. United States*, 531 A.2d 964, 966, 966 n.3 (D.C. 1987) (citing the "District of Columbia Mandatory-Minimum Sentences Initiative of 1981 Delayed Effectiveness Amendments Emergency Act of 1983" (D.C. Act 5-10, March 9, 1983, 30 D.C. Reg. 1226-27)). "[T]here is no [initial] legislative history." *Johnson v. United States*, 686 A.2d 200, 208 (D.C. 1996) (King, J., concurring).

"shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence."  D.C. Code § 22-4504 (b).

The government contends that the trial court did not err, plainly or otherwise, in sentencing appellant to five-year, mandatory-minimum terms of imprisonment for armed robbery and PFCV because "[t]he statutory provisions setting the mandatory minimums for both offenses make explicit that the mandatory sentences must be imposed and served, notwithstanding the YRA."[13] We disagree with the government's assertion that the while-armed and PFCV statutes are "explicit" to that effect.  Neither statute's mandatory-minimum sentence provision contains the strong "[n]otwithstanding any other provision of law" language that led us to conclude "inescapabl[y,]" in *Peterson v. United States*,

---

[13]    The government also argues that "as to the narrow class of crimes covered by" §§ 22-4502 (c) and -4504 (b), the foregoing mandatory-minimum sentence provisions, rather than "the more general YRA [provisions] . . . control." We need not decide the issue, but it seems at least equally reasonable to treat the YRA as the more specific statute, and the while-armed and PFCV statutes as more general ones. *Cf. United States v. Stokes*, 365 A.2d 615, 619 n.16 (D.C. 1976) ("It also could be argued, however, that . . . the Youth Act could be regarded as the more specific of the two enactments. The Youth Act confers a liberalized sentencing alternative on a specific class of offenders, while D.C. Code 1973, § 22-2404 applies in general to those convicted of first-degree murder.").

997 A.2d 682, 684-85 (D.C. 2010), that the YRA's authorization of sentencing alternatives did not permit the trial court to suspend imposition or the execution of the seven-year mandatory-minimum sentence required by the carjacking statute, D.C. Code § 22-2803 (c) (2001).[14]  Somewhat to the same point, neither statute contains the strong "notwithstanding" clause that the Council adopted when it passed the Comprehensive Youth Justice Amendment Act of 2016, D.C. Law 21-

---

[14] Section 22-2803 (c) provides that "[n]otwithstanding any other provision of law, a person convicted of carjacking shall not be released from prison prior to the expiration of 7 years from the date of the commencement of the sentence, and a person convicted of armed carjacking shall not be released from prison prior to the expiration of 15 years from the date of the commencement of the sentence." *See also Beale v. United States*, 465 A.2d 796, 806 (D.C. 1983), *overruled in part on other grounds by Winfield v. United States*, 676 A.2d 1 (D.C. 1996) (en banc) (holding that where the defendant was convicted of first-degree murder under the provision now codified as D.C. Code § 22-2104 (b), the trial court correctly refused to consider probation as a sentencing alternative; reasoning that in light of the "[n]otwithstanding" language in the provision's mandatory-minimum paragraph, "it would be impossible for this court . . . to authorize a sentencing judge who sentences a first degree murderer to life imprisonment then to suspend execution of this sentence and to place such defendant on probation").

On the other hand, the language in the while-armed statute — "shall not be released, granted probation, or granted suspension of sentence, prior to serving such mandatory-minimum sentence," § 22-4502 (c) — like the nearly identical language in  the PFCV statute, § 22-4504 (b), is at least arguably stronger than the carjacking statute's prohibition against early "release[] from prison," D.C. Code § 22-2803 (c), since it forecloses not only early release but also leniency that would enable a defendant to entirely avoid a period of incarceration.  The language of the while-armed and PFCV statutes thus provides some support for the government's position that the mandatory-minimum sentence each prescribes must not only be served when imposed, but also "must be imposed."

0238 (effective Apr. 4, 2017) (the "CYJAA"), codified at D.C. Code § 24-403.01 (c)(2) (West 2017), providing that "[n]otwithstanding any other provision of law, if the person committed the offense for which he or she is being sentenced under this section while under 18 years of age . . . [t]he court may issue a sentence less than the minimum term otherwise required by law." § 24-403.01 (c)(2)(A).

In any event, the issue before us is not whether the trial court was plainly correct in (apparently) assuming that it lacked discretion to sentence appellant to less than the mandatory minimums prescribed by the while-armed and PFCV statutes, but whether the court was plainly wrong if it assumed that it was bound to apply the mandatory minimums.[15] For us to conclude that the trial court was plainly wrong, its (putative) error in assuming that the mandatory minimum applied "must be so clear or obvious that it could not be subject to any reasonable

---

[15] We say that the court "apparently" assumed that it was bound to apply the mandatory-minimum sentences because the court observed merely that "there's a mandatory minimum attached" to the offenses that "is what city coun[ci]l said is appropriate under the circumstances." At least arguably, the court's reference to the sentence the Council thought appropriate was in recognition of the court's obligation to impose a sentence that "[r]eflects the seriousness of the offense[.]" D.C. Code § 24-403.01 (a)(1) (2012 Repl.). We note also that the court had received the PSR report that referred to the mandatory-minimum sentences but that also presented for the court's information appellant's "criminal history score" and the applicable "guideline compliant sentence," which was 48 to 96 months for the robbery-while-armed and PFCV offenses.

dispute." *United States v. Courtney*, 816 F.3d 681, 684 (10th Cir. 2016) (citing *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

With respect to the while-armed statute, D.C. Code § 22-4502, the language of that statute[16] and the legislative history of the YRA both provide support for appellant's claim of error.  As pertinent here, D.C. Code § 22-4502 (e)(1) provides that "Subchapter I of Chapter 9 of Title 24 [*i.e.*, the YRA] shall not apply with respect to [*inter alia*] any person . . . convicted more than once of" a while-armed crime of violence or dangerous crime.  Under the *expressio unius, exclusio alterius* canon of statutory construction,[17] the strong implication of § 22-4502 (e)(1) is that the YRA *is* applicable to a youth offender such as appellant, convicted for the first time of robbery while armed.

---

[16]  Our analysis of the interplay between the YRA and §§ 22-4502 and -4504 starts "where all such [statutory construction] inquiries must begin:  with the language of the statute itself." *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989) ("[W]here . . . the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'") (citation omitted)).

[17]  *See Andrus v. Glover Constr. Co*., 446 U.S. 608, 616-17 (1980) ("Where [the legislature] explicitly enumerates certain exceptions to a general prohibition [or rule], additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

The government would have us read § 22-4502 (e)(1) to mean that (1) *all* of the benefits of the YRA (including alternative sentencing options and expungement) must be denied to an offender described there, while (2) for an offender convicted for the first time of robbery while armed, the conviction may eventually be set aside pursuant to the YRA, but the five-year mandatory-minimum sentence nonetheless applies. At least arguably, that reading is inconsistent with the legislative history of the YRA.[18] The Committee on the Judiciary Report accompanying the legislation that became the YRA includes the following statements:

> [The legislation] provides that a youth offender who is convicted of a second armed offense *is ineligible for sentencing under the act*. Also, a youth offender convicted of murder (including felony murder) is *precluded from benefiting from the rehabilitative sentencing options* of the act.

D.C. Council, Report on Bill 6-47 at 3 (June 19, 1985) (the "YRA Report") (emphasis added).[19] The Committee's focus on exclusions from "sentencing under

---

[18] Notably, the YRA amended § 22-4502 (e)(1) to substitute a reference to the YRA for a previous reference to the Federal Youth Corrections Act, its predecessor statute, showing that the Council was focused on the interplay between the YRA and § 22-4502.

[19] These statements are all the more significant given that the Council was urged to exclude YRA sentencing for armed robbery. *See* YRA Report at 26 (statement of City Administrator/Deputy Mayor Thomas Downs urging the Council to add armed robbery to the "current exemption of murder").

the act" and from the "sentencing options of the act" for second-time violence-while-armed offenders and offenders convicted of murder while armed, and not just on such offenders' ineligibility for the conviction-set-aside opportunity the YRA provides, arguably supports reading § 22-4502 (e)(1) to imply that youth offenders not described there — including appellant, who was convicted for the *first* time of a while-armed crime of violence (robbery) — may be sentenced under the YRA rather than in accordance with the mandatory minimum.[20]

For the foregoing reasons, appellant possibly has (and for purposes of our analysis, we can assume he has) the better of the argument regarding whether the

---

[20] There is further support for that interpretation in the fact that the YRA was enacted to "fill the void created by congressional repeal of the Federal Youth Corrections Act." YRA Report at 2. Our case law applying the Federal Youth Corrections Act had reasoned that it was "logical to assume that had Congress intended the exclusion of first-degree murder from [Federal] Youth [Corrections] Act coverage, this intent would have been expressed at the time the provisions of the Act" became effective in the District of Columbia. *Stokes*, 365 A.2d at 618 (holding, in agreement with *United States v. Howard*, 449 F.2d 1086 (D.C. Cir. 1971), that a defendant convicted of first-degree felony murder before reaching age twenty-two was eligible to receive a Federal Youth Corrections Act sentence). In light of that history, to which the Committee on the Judiciary alluded in the YRA Report (YRA Report at 3), it seems reasonable to expect that in adopting the YRA, the Council would have taken caution to make it express that first-time crime-of-violence-while-armed youth offenders are ineligible for the alternative sentencing options of the YRA (and are eligible only for sentence expungement pursuant to the YRA) if that is what it intended.

trial court erred if it assumed that it was required to sentence him to at least the mandatory-minimum sentence under § 22-4502 (a)(1) for robbery while armed.

We cannot reach that conclusion as to the mandatory-minimum sentence under the PFCV statute, however. Unlike the while-armed statute, the PFCV statute, § 22-4504 (b) — which "create[d] a new offense" unknown at the time the YRA was enacted — includes no provisions that, by implication, exclude any category of offenders from its mandatory-minimum sentence provision.[21] D.C. Council, Report on Bill 8-185 at 3 (Dec. 4, 1989) (the "PFCV Report"); *see also id.* at 2 (stating that Bill 8-185 "would establish a mandatory 5 year prison term *for anyone* convicted of committing a felony while possessing . . . a firearm or imitation firearm") (emphasis added). Nor does the legislative history of the PFCV statute's mandatory-minimum sentence provision (which, again, was enacted years after the YRA) contain any language expressing an intent by the Council to permit trial judges to exercise their discretion under the YRA to avoid sentencing a youth offender to at least the PFCV mandatory minimum, or any language reflecting that

---

[21] *Thomas v. United States*, 602 A.2d 647, 652 (D.C. 1992) (stating that § 22-4504 (b) "leaves the sentencing judge no discretion to tailor the sentence to either the degree of the harm caused by the perpetrator *or any other factor*" (emphasis added)).

the Council considered the interplay between the PFCV statute and the YRA.[22]

*See generally* PFCV Report.  Arguments might be made that the same YRA

sentencing discretion should be available to the trial court in sentencing a youth

---

[22]  In addition, nothing in the language of the YRA itself suggests that the sentencing discretion it affords to trial judges generally supersedes statutory mandatory-minimum sentences.  The YRA declares that the trial court "may suspend the imposition or execution of sentence and place the youth offender on probation."  D.C. Code § 24-903 (a)(1).  Section 24-903 (a)(1) is not unlike D.C. Code § 16-710 (a) (2012 Repl.), which, describing a trial court's general discretion in sentencing, states broadly, in pertinent part that:

> [I]n criminal cases in the Superior Court of the District of Columbia, the court may, upon conviction, suspend the imposition of sentence or impose sentence and suspend the execution thereof, or impose sentence and suspend the execution of a portion thereof, for such time and upon such terms as it deems best, if it appears to the satisfaction of the court that the ends of justice and the best interest of the public and of the defendant would be served thereby.  In each case of the imposition of sentence and the suspension of the execution thereof, or the imposition of sentence and the suspension of the execution of a portion thereof, the court may place the defendant on probation under the control and supervision of a probation officer.

We held in *Moorer v. United States*, 868 A.2d 137 (D.C. 2005), that the sentencing discretion conferred by § 16-710 (a) "cannot be applied in carjacking cases."  *Id.* at 144-45 (concluding that the carjacking statute "require[s] a person convicted [pursuant to it] to spend at least seven years behind bars, *in all cases, with no exceptions.*" (emphasis added)).  From that holding, and from the similarity between § 16-710 (a) and the YRA provision codified at § 24-903 (a)(1), it seems to follow that § 24-903 (a)(1) is not a *sui generis* provision that by its very language trumps any mandatory-minimum sentence.

offender convicted of PFCV as is available in concurrently sentencing the youth offender for having committed robbery (or another crime of violence or dangerous crime) while armed with a firearm. Indeed, our dissenting colleague suggests that requiring a mandatory-minimum sentence under the PFCV statute while not requiring a mandatory minimum for the same defendant under the while-armed statute seems "nonsensical." *Post* at 51. "What we must decide, however, is not whether the legislature . . . ought to treat the two situations interchangeably, but whether it has done so." *Edwards v. United States*, 583 A.2d 661, 668 (D.C. 1990).

The PFCV Report explains that the PFCV statute was enacted in response to the "record number of homicides committed with firearms" in 1988 and the "[c]ontinued increases in homicides and violent assaults . . . attributable to the increase in the availability of firearms" despite the District's having "one of the most stringent gun control laws in the nation[.]" PFCV Report at 1. The legislation was intended "to help the District deal with the deadly threat to public safety posed by persons . . . who commit offenses while armed with . . . firearms[.]" *Id.* Thus, the legislators' view was that existing legislation establishing penalties for offenses committed while armed with a firearm was not

sufficiently effective and needed "help."[23] The Council passed the legislation despite an objection that "with respect to crimes of violence, application of a mandatory minimum sentence of five years is superfluous[.]" PFCV Report at 8 (summary of testimony of Kim A. Taylor, Director, Public Defender Service). In light of that history, we have no basis for concluding that the trial court here was plainly in error if it assumed it was required to impose the PFCV mandatory minimum.[24]

---

[23] Note, too, that we have declined to treat PFCV and a while-armed-with-a pistol offense as "the same offense" for double jeopardy purposes. *Thomas*, 602 A.2d at 650-55.

[24] The Council has from time to time indicated awareness of the issue of whether mandatory-minimum sentences apply to youth offenders, but it has not spoken to the issue unequivocally as it affects the broad class of offenders eligible for YRA benefits. For example, the Committee Report to D.C. Law 12-165, the "Truth in Sentencing Amendment Act of 1998," states that the effect of the provision eventually codified at D.C. Code § 24-403.01 (c)(1) (providing for sentences "for a definite term, which shall not exceed the maximum term allowed by law or be less than any minimum term required by law") is to "preserve[] existing maxima and minima" and "not require or result in any extension or application of mandatory minimum sentences to categories of offenders, including persons sentenced under the Youth Rehabilitation Act, to which the mandatory minima do not apply currently under District of Columbia law." Committee on the Judiciary, Report on Bill 12-523 at 9 (Feb. 25, 1998). The reference in the legislative history to preserving the status quo with respect to "existing maxima and minima" does not answer the question whether any minima already applied to offenders sentenced under the YRA.

Likewise, in the CYJAA ("[n]otwithstanding any other provision of law, if the person committed the offense for which he or she is being sentenced under this section while under 18 years of age . . . [t]he court may issue a sentence less than

(continued…)

In short, appellant's argument that the trial court plainly erred in assuming that he was inescapably subject to the PFCV mandatory-minimum sentence fails. For that reason, we must uphold appellant's sixty-month sentence for PFCV. That being the case, we must also conclude that appellant is not entitled to relief with respect to the sixty-month mandatory minimum the trial court believed it was required to impose for his robbery while armed conviction, because appellant cannot show that his substantial rights were affected by the (assumed) error.

To be sure, the Supreme Court has stated that "[w]here . . . the record is silent as to what the [trial] court might have done had it considered the correct [sentencing] range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." *Molina-Martinez*

---

(…continued)
the minimum term otherwise required by law," D.C. Code § 24-403.01 (c)(2)(A)), the Council's use of the imprecise term "otherwise required by law" provides no insight into whether the Council believed that youth offenders eligible for rehabilitation under the YRA were theretofore generally subject to "minimum term[s] . . . required by law" (or into whether the Council believed that youth offenders who are over age 18 have been and remain generally subject to "minimum term[s] . . . required by law").

The foregoing provisions do not assist us in answering the question whether appellant was subject to a mandatory-minimum sentence upon his conviction of PFCV.

*v. United States*, 136 S. Ct. 1338, 1347 (2016); *see also United States v. Head*, 817 F.3d 354, 361 (D.C. Cir. 2016) ("In the sentencing context, an error affects a defendant's substantial rights where there is a reasonable likelihood that the sentencing court's obvious errors affected his sentence." (internal quotation marks omitted)). That general principle is inapplicable here because the court imposed *concurrent* sixty-month sentences for PFCV and robbery while armed. For that reason, even if we assume that the court plainly erred in assuming that appellant was subject to the while-armed mandatory minimum, we must conclude that allowing the sixty-month sentence for armed robbery to stand will not prejudice appellant, given that he must serve the sixty-month sentence for PFCV.[25] For the same reason, we cannot say that allowing the sentence to stand will seriously affect

---

[25] We also are not persuaded that had the trial court understood it was not bound by a mandatory minimum, it necessarily would have imposed probation or a lighter sentence. The court did comment that "in some respect[,] maybe the mandatory minimum is a little too harsh[.]" But the court also began its remarks by saying that it "d[id]n't see any value going above the mandatory minimum in this case." That remark suggests that the court may have been primarily focused on whether, on the record presented, a sentence greater than the mandatory minimum was warranted. It is also notable that the court sentenced appellant to a "guideline compliant" term of thirty months on the ADW charge, thus exceeding the twenty-four month term urged by the government. That suggests that the court did not think that either non-incarceration or a low-end sentencing-guideline-compliant sentence was warranted — a view that we can surmise the court held as to all of the offenses of which appellant was convicted.

the fairness, integrity, or public reputation of the judicial proceedings.[26] Accordingly, appellant is not entitled to relief on his sentencing claim.

## V.

The parties concur, and we agree, that appellant's "convictions for armed robbery and ADW merge." *See Morris v. United States*, 622 A.2d 1116, 1129 (D.C. 1993) ("[A]rmed robbery and assault with a dangerous weapon merge where both offenses are committed against the same victim as part of the same criminal incident."). A remand is necessary for the trial court to vacate appellant's ADW conviction. *See Medley v. United States*, 104 A.3d 115, 133 (D.C. 2014). Resentencing is not required, because appellant's sentences for these counts are concurrent. *See id.*

---

[26] *See, e.g.*, *United States v. Gjini*, 419 Fed. App'x 4, 6 (2d Cir. 2011) ("The district court indisputably erred in imposing a 320-month sentence [for a witness retaliation conviction]. However, because Gjuraj received a concurrent 320-month sentence on the narcotics distribution charge, Gjuraj fails to show that the error affected his substantial rights or the fairness, integrity or public reputation of judicial proceedings." (internal quotation marks omitted)); *United States v. Mitchell*, 398 Fed. App'x 159, 163-64 (6th Cir. 2010) (explaining that assumed sentencing error as to three counts "did not seriously affect the fairness of the judicial proceedings" "because the district court sentenced Mitchell to concurrent terms on all four counts").

## VI.

Wherefore, the judgment of the trial court is affirmed, except that we remand for the court to vacate appellant's ADW conviction.

*So ordered.*

MCLEESE, *Associate Judge*, concurring: I join the opinion of the court in its entirety. I write separately to briefly address the dissent's contention that the division in this case is bound by an earlier holding in *Green v. United States*, 974 A.2d 248 (D.C. 2009). The opinion for the court concludes to the contrary that the court in *Green* simply accepted a concession without ruling on the correctness of that concession. *Ante* at 13-14. In large part, the dissent's contrary interpretation of *Green* rests on the contention that "[p]arties do not, by agreement or concession, relieve the court of its responsibility to decide questions of law that determine the proper disposition of a case." *Post* at 39-40. Although there is support for that contention, the topic is more complicated than the dissent suggests. Appellate courts, including the Supreme Court and this court, often give judgment without deciding legal issues that might have led to a different disposition of a case. For example, doctrines such as estoppel, waiver, and forfeiture often lead appellate

courts to take as given legal principles that the courts might not have accepted on the merits if those legal principles had been properly presented for decision. Reliance on such doctrines does not reflect "abandon[ment of the] judicial role." *Post* at 41. Rather, reliance on such doctrines reflects courts' understanding of limits on the judicial role imposed by considerations of both prudence and procedural fairness to litigants. *See, e.g.*, *Rose v. United States*, 629 A.2d 526, 536-37 (D.C. 1993) (under "our adversarial system," appellate courts generally act as "arbiters of legal questions presented and argued by the parties before them") (internal quotation marks omitted).

In the context of affirmative concessions, this court, like other appellate courts, frequently renders judgment based on legal conclusions that it assumes without deciding because they are not contested by the parties. *See, e.g.*, *Frey v. United States*, 137 A.3d 1000, 1002 (D.C. 2016) ("The parties in this case, however, do not dispute that, generally speaking, the Adams Building is a public building for purposes of the unlawful-entry statute. We accept that premise without deciding the question."; reversing judgment). Merger cases are a recurring example. *See, e.g.*, *Bernal v. United States*, 162 A.3d 128, 130 n.2 (D.C. 2017) ("The government concedes that Counts Three and Four, only, merge. Accordingly, we remand solely for the trial court to vacate appellant's conviction

for Count Three."). Moreover, despite the language the dissent cites from the Supreme Court's 1942 decision in *Young v. United States*, 315 U.S. 257, 258-59, *post* at 40, the Supreme Court itself often (although not invariably) reverses or vacates judgments in criminal cases based on government concessions, without independently evaluating whether the concession was correct. *See, e.g.*, *Nunez v. United States*, 554 U.S. 911 (2008) (per curiam). Even Justice Scalia, who was critical of reflexively doing that, acknowledged over twenty years ago that "[t]he practice is by now well entrenched." *Lawrence v. Chater*, 516 U.S. 163, 184 (1996) (Scalia, J., dissenting). In any event, the issue in this case is not whether the court in *Green* acted permissibly by simply accepting a concession without independently ruling on the correctness of the concession. Whether permissible or not, that is in fact what the court did in *Green*.

Finally, contrary to the assertion of the dissent, the difference between the outcome of this case and the outcome in *Green* does not "violate[] the constitutional principle that similarly situated parties should be treated equally." *Post* at 38. The defendant in *Green* objected in the trial court and the United States conceded the validity of his objection on appeal. In the present case, Mr. Briscoe did not object in the trial court and the United States has contested his claim on appeal. These important procedural differences mean that the defendant in *Green*

and Mr. Briscoe are simply not similarly situated. *See, e.g.*, *United States v. David,* 83 F.3d 638, 643 n.6 (4th Cir. 1996) ("[A] defendant who objects to an alleged error . . . is not similarly situated to a defendant who did not . . . .") (citation and internal quotation marks omitted).

Separate statement by THOMPSON, *Associate Judge*: Our dissenting colleague laments that the result of the majority's disposition of this case is that similarly situated parties — appellant and the defendant in *Green* — have not been treated equally. If what our colleague means is that the trial court in *Green* on remand exercised sentencing discretion while the trial court here did not, I emphasize that it is not entirely clear in this case that the trial judge thought he was bound to impose mandatory-minimum sentences and therefore failed to exercise sentencing discretion as to the while-armed and PFCV offenses. The court observed that mandatory-minimum sentences, which it characterized as an expression of the sentence the Council deemed "appropriate under the circumstances," made sentencing "difficult." At least arguably, the court would not have regarded sentencing as difficult if it thought all it had to do was impose

mandatory-minimum terms of incarceration. Thus, it is not clear that appellant, unlike Green, was deprived of the benefit of trial court sentencing discretion.[1]

I also think it overstates the case to say that appellant and Green are "similarly situated" defendants entitled to "equal treatment." *Post* at 38. Green had a gun in his waistband at the time of his arrest for possession with intent to distribute drugs, and there was no evidence that he had brandished or used the weapon to assault anyone. 974 A.2d at 251. On resentencing, he was sentenced to time served, or about three years. Appellant, by contrast assaulted and robbed the victim at gunpoint and pulled the trigger. He had "greater engagement with the weapon," to use our colleague's language. *Post* at 51 n.12. In the trial court's language, appellant made the victim's life "very difficult." Appellant's sentence of 60 months for conduct that had "a really hard impact" on the victim does not support concern about his having to serve an unequal sentence.

Our dissenting colleague also emphasizes the statutory language that it is when the trial court finds that a youth offender "will not derive benefit from

---

[1] Indeed, if what Judge Ruiz calls the "accepted view, as reflected in the Voluntary Sentencing Guidelines Manual" was that *Green* decided the sentencing issue presented in this case," *post* at 46 n.7, that is all the more reason to think the trial judge in this case thought he had sentencing discretion.

treatment under [D.C. Code § 24-903 (b) (providing for "treatment and supervision" up to the "maximum penalty of imprisonment otherwise provided by law")]" that the court "may sentence the youth offender under any other applicable penalty provision." D.C. Code § 24-903 (d). The point is somewhat beyond the point because, according to a September 8, 2017, report by the Criminal Justice Coordinating Council for the District of Columbia ("CJCC") entitled "The District's Youth Rehabilitation Act: An Analysis," "at present, there are no programs that are specifically developed to supervise or treat those sentenced under the YRA." September 8, 2017, CJCC Report at 34.

RUIZ, *Senior Judge*, dissenting in part: I would remand the case for resentencing by the trial court to exercise discretion under the D.C. Youth Rehabilitation Act, D.C. Code § 24-903 (2012 Repl.) (YRA), as we did in *Green v. United States*, 974 A.2d 248 (D.C. 2009). The trial court made a determination that appellant would benefit from sentencing under the YRA, but believed that a 5-year minimum sentence was required by law for conviction for a while-armed offence, D.C. Code § 22-4502 (a) (2012 Repl.), and PFCV, D.C. Code § 22-4504 (b) (2012 Repl.). This was a clear error. The YRA allows the court to impose a sentence less than the otherwise mandatory minimum, if the trial judge deems that

a youth offender would benefit from a lesser sentence. In this case, there is reason to believe the trial court would have exercised that discretion to appellant's benefit. The majority's decision to deny a remand for resentencing means that the appellant in this case is being treated differently than the appellant in *Green*. 974 A.2d at 262. For these reasons I conclude that the trial court plainly erred in imposing the mandatory minimum sentences rather than exercising discretion in sentencing. A remand that will allow the trial court to resentence unfettered by the mistaken belief that mandatory minimum sentences must be imposed is in order. I, therefore, dissent from the majority's decision that denies appellant's request for a remand for resentencing and affirms the imposition of mandatory minimum sentences.[1]

A remand to permit the trial court to exercise YRA discretion falls squarely within our holding in *Green*, 974 A.2d at 262, n.43, where we remanded for resentencing, noting that the mandatory minimums for while-armed offenses (for a first time offender) and PFCV need not be imposed if the judge believes sentencing a youth offender under the YRA is appropriate. In *Green*, as is the case here, the

---

[1] I join the remainder of the opinion of the court rejecting appellant's claims under *Brady* and Rule 16 and affirming the convictions, with a remand for merger of the ADW conviction.

trial court believed it was required to impose mandatory minimums, even though sentencing was done under the YRA. *Id*. This court affirmed the convictions on appeal, but remanded the case for resentencing because "the five-year mandatory minimum terms . . . do not have to be imposed when sentencing under the DCYRA." *Id*. To come to a contrary disposition in this case is directly at odds with our disposition in *Green* and thus also contrary to our obligation to follow precedent established by a prior division of this court, as required by *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C. 1971). It also violates the constitutional principle that similarly situated parties should be treated equally, as the appellant in *Green* and appellant here were both youth offenders, convicted of the same offenses, where the trial court decided to sentence under the YRA. *See Griffith v. Kentucky*, 479 U.S. 314, 322-23 (1987). Yet only one is accorded resentencing for the exercise of trial court discretion under the YRA, while the other is denied the exercise of that judicial discretion and subjected to two mandatory minimum sentences.[2]

---

[2] Appellant requested a "lenient" "sentence," the "minimum permissible sentence pursuant to the YRA," but did not expressly challenge the trial court's statements that mandatory minimums were required. That circumstance means that in this case appellant must meet the strictures of plain error review to warrant relief. Once appellant has hurdled those requirements, as I conclude he has, he is entitled to receive a sentence that is the result of individualized judicial discretion on a par with other youth offenders sentenced under the YRA.

The majority contends that *Green* should not be given precedential weight because there the court "merely accepted" the government's "concession" regarding the proper interpretation of the relevant statutes rather than deciding the issue for itself. See *ante* at 13-14. To be clear, the court in *Green* did not say that it was acceding to the government's concession; nor did the court say it was avoiding deciding the issue, as we sometimes do, because it was unnecessary to do so. *See, e.g.*, *Ferguson v. United States*, 157 A.3d 1282, 1290 n.2 (D.C. 2017).[3] Instead, what the *Green* court did was to remand for resentencing without requiring the imposition of mandatory minimums after it had received full briefing on the dispositive issue of statutory interpretation. The court indicated that it understood the government had taken a contrary position in the trial court and, upon further reflection, had come around to the appellant's view on the proper interpretation of the statutes. The fact that the government conceded on appeal that its initial interpretation was erroneous does not mean that this court accepted that concession unquestioningly. Parties do not, by agreement or concession, relieve the court of

---

[3]    The court has other means to signal that a decision does not have precedential effect. For example, it may decide not to publish its opinion and instead issue a Memorandum Opinion and Order. *See* D.C. App. R. 28 (g) (providing that unpublished opinions may not be cited to the court except for purposes of law of the case, res judicata, collateral estoppel and criminal and disciplinary proceedings involving the same person). *Green* is a published opinion of the court.

its responsibility to decide questions of law that determine the proper disposition of a case. As the Supreme Court has observed, exercise of this judicial duty is particularly important in criminal cases:

> The public trust reposed in the law enforcement officers of the Government requires that they be quick to confess error when, in their opinion, a miscarriage of justice may result from their remaining silent. But such a confession does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. *See Parlton v. United States*, 64 App. D.C. 169, 75 F.2d 772 [(1935)]. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers. Furthermore, our judgments are precedents, and the proper administration of the criminal law cannot be left merely to the stipulation of parties. *Cf. Rex v. Wilkes*, 4 Burr[.] 2527, 2551, 98 Eng. Rep. 327; *State v. Green*, 167 Wash. 266, 9 P.2d 62 [(1932)].

*Young v. United States*, 315 U.S. 257, 258-59 (1942).

In order to remand for resentencing in *Green*, this court had to decide that as a matter of statutory interpretation the trial court was not bound to impose mandatory minimums and could lawfully exercise discretion under the YRA in sentencing youth offenders for a first-time while-armed offense, D.C. Code § 22-4502, and PFCV, D.C. Code § 22-4504 (b). This ruling was an "integrated

component" and "essential to the outcome" and is therefore a holding binding on us. *Parker v. K & L Gates*, *LLP*, 76 A.3d 859, 874 (D.C. 2013) (Ferren, S.J., concurring); *see Seminole Tribe v. Florida*, 517 U.S. 44, 67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound."); 18 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 134.04 [5] (3d ed. 1999) (noting that stare decisis "may extend beyond issues that are explicitly decided to those which are actually decided by necessary implication").

If, as the majority contends, the *Green* court did not decide the legal issue of statutory interpretation but merely "went along" with the parties, the court would not only have failed in its responsibility to exercise independent judgment on a question of law but also here acted beyond its authority by remanding so that the trial court could take a judicial action (exercise sentencing discretion under the YRA) it had no legal authority to do (because it was bound to impose mandatory minimum sentences).[4] There is no reason, however, to assume that this court abandoned its judicial role in *Green*. The parties in the *Green* case had fully

---

[4] This is the criticism of the court's prior decision leveled in *United States v. Garcia-Caraveo*, 586 F.3d 1230, 1234 n.2 (10th Cir. 2009), cited by the majority opinion. See *ante* at 13 n.7.

briefed the issue concerning the application of the mandatory minimums for while-armed and PFCV offenses when sentencing youth offenders under the YRA. A question of law was squarely presented and the court was well aware of the arguments on the merits of both sides. The court decided the issue by remanding for resentencing without imposition of mandatory minimums.

Whether a decision is binding is recognized not by the number of words used by the court in arriving at its disposition, but by whether the "issue constituted 'a statement not addressed to the question before the court or necessary for its decision.'" *Albertie v. Louis & Alexander Corp.*, 646 A.2d 1001, 1005 (D.C. 1994) (quoting *United States v. Crawley*, 837 F.2d 291, 292 (7th Cir. 1988)). In *Crawley*, Judge Posner identified certain hallmarks of non-binding dicta, noting that dicta is "unnecessary to the outcome of the earlier case," that because it is "not grounded in the facts of the case . . . the judges may therefore have lacked an adequate experiential basis for it," and "that the issue addressed in the passage was not presented as an issue, hence was not refined by the fires of adversary presentation." 837 F.2d at 292-93.

None of these hallmarks of dicta is present in the *Green* case. The conclusion that sentencing under the YRA allows for judicial discretion when sentencing a youth offender for violations of D.C. Code §§ 22-4502 (a) and 4504 (b), even when mandatory minimums apply to adults, was necessary for the court's ultimate disposition. Unless it decided that "the five-year mandatory minimum terms required by D.C. Code §§ 22-4502 (a) and 4504 (b) do not have to be imposed when sentencing under the DCYRA," *Green*, 974 A.2d at 262, n.43, the court would have simply affirmed. Instead, it remanded for resentencing without those constraints. *Id.* at 262.

Nor can it be said that analysis of the YRA's impact on minimum sentences was not grounded in the facts or properly presented as an issue in *Green*. The record revealed that the trial court believed mandatory minimums had to be imposed. On appeal, the defendant presented the question to this court, countering arguments the government made in the trial court, and requested a remand for resentencing by the trial court free of the constraint of having to impose the mandatory minimums. For its part, the government laid out, in over seven pages of its brief to the court, the arguments that supported imposition of mandatory minimum sentences. Ultimately, however, the government came to the following

legal conclusion with respect to the proper interpretation of the relevant statutory provisions:

> In sum, while the government argued below and continues to believe that an argument can be made that the mandatory minimum terms in D.C. Code §§ 22-4502 (a) and -4504 (b) must be applied when imposing a period of incarceration under the DCYRA, the government now concedes that the several statutory provisions and legislative history discussed above create sufficient ambiguity so as to render application of the rule of lenity appropriate. As a consequence, the government does not oppose appellant's request for a remand for re-sentencing.

Government's Br. in *Green*, 38. The fact that the government came to agree that Green had the better of the argument hardly meant that the issue lacked "the fires of adversary presentation." A request for remand for resentencing was before the court and both sides of the statutory interpretation issues that determined whether resentencing was required were fully briefed by both parties. The court was made aware of the reasoned basis for the conclusion that mandatory minimums do not apply, as well as of the arguments that supported the government's position to the contrary taken before the trial court. As discussed, this court would have been acting in contravention of a statutory mandate by ordering a remand for the exercise of discretion in resentencing under the YRA unless it thought that mandatory minimums did not apply. Perhaps it would have been preferable for the

court to give a fuller explanation for its conclusion, but it would not be the first time that an opinion of the court is not as extended as one would like or as is usually the case. Lack of a full exposition does not convert a legal conclusion necessary to the disposition into non-binding dicta. "[N]ot all judicial decisions are crystal clear about the essentials inherent in the outcome . . . . [what is expected is] language from the court that communicates a clear understanding of the ingredients 'necessary' to every 'holding.'" *Parker*, 76 A.2d at 874 (Ferren, S.J., concurring).[5] In *Green*, the court communicated that resentencing was warranted because the trial court had acted under the erroneous belief it was required to impose mandatory minimums. *Green*, 974 A.2d at 262 n.43.[6]

---

[5] There is a more expansive view. *See Parker*, 76 A.3d at 877-78 (McLeese, J., concurring) ("In my view . . . it is not accurate to say that only rulings essential to the outcome can constitute holdings.").

[6] The majority's reliance on language found in *Daly v. District of Columbia Dep't of Emp't Servs.*, 121 A.3d 1257, 1262 (D.C. 2015), that a prior decision is not a holding if based on a "concession" overstates the case. The dispute over statutory interpretation in the *Daly* case was unnecessary to the disposition in the prior case, where imposition of a late payment penalty fee would have been affirmed because the compensation payment was late regardless of which of two possible statutory interpretations of the term "becomes due" (the issue decided in *Daly*) was adopted by the court. *See Orius Telecomms., Inc., v. District of Columbia Dep't of Emp't Servs.*, 857 A.2d 1061, 1070-71 (D.C. 2004). The "concession" in the prior case was made by counsel during oral argument on appeal and pertained to a *factual* matter — when notice of an order was received by the employer/insurer — and not on an issue of statutory interpretation that was presented to the court. *See id.* at 1063 (referring to "the patchy record before us" and "an important concession" made during oral argument); *id.* at 1064 (noting the ALJ's finding that employer/insurer had not "received proper notification of the

(continued…)

The majority's conclusion that *Green* is not binding precedent deviates from the accepted view, as reflected in the Voluntary Sentencing Guidelines Manual, that *Green* decided the sentencing issue presented in this case.[7]  It is also worth

---

(…continued)

compensation order"); *id*. at 1070-71 (noting that the legal issue was "never expressly stated by either the ALJ or the [DOES] director" and that the court was not thwarted in deciding the case "by the absence of express findings nor the seemingly unsupported assumptions" in the agency's decisions in light of counsel's late concession that he actually received the compensation order, triggering the statutory payment period).  An essential principal of stare decisis is that the previous decision concerns an issue of law, not fact.  *See* MOORE'S FEDERAL PRACTICE § 134.05 [3].  In *Daly* the court was squarely presented with the issue of statutory interpretation that lurked, but was not decided by the court, in *Orius* in light of counsel's factual concession.  *Daly*, 121 A.3d at 1262 (noting that "we did not explicitly answer," "did not clearly decide," "we have no problem in now formally holding.")  As discussed in the text, in *Green* the issue of statutory interpretation, a legal issue for the court to decide, was squarely presented, fully briefed, and necessarily underpinned the court's disposition remanding the case for resentencing.  In short, we are not in a *Daly-Orius* situation.

[7]  During each of the eight years since *Green* was decided in 2009, the Voluntary Sentencing Guidelines Manual has stated that "[a] youth offender sentenced under the Youth Rehabilitation Act (D.C. Code § 24-901 *et seq*.) for one of the offenses *shown here in italics* [i.e., first-time while-armed offenses and PFCV] need not be sentenced to a mandatory minimum term."  (underlining in original).  The Manual cites *Green* as authority.  VOLUNTARY SENTENCING GUIDELINES MANUAL § 3.6 (The District of Columbia Sentencing and Criminal Code Revision Commission 2009, 2010, 2011, 2012, 2013, 2014, 2015, 2016).  The 2017 Manual adds a citation to *Peterson*, which came to a different conclusion with respect to the mandatory minimum for carjacking, *see ante* at 18, and makes the point that with respect to "most offenses that require a mandatory  minimum" — the nine offenses with mandatory minimums remaining after this court's decisions in *Green* and *Peterson* — this court has "not decided whether a judge

(continued…)

emphasizing that the majority does not conclude today that *Green*'s disposition remanding for resentencing under the YRA was legally incorrect. To the contrary, as Judge Thompson's opinion cogently lays out, the plain statutory language of the while-armed statute, D.C. Code § 22-4502 (e)(1), and its legislative history strongly support that the mandatory minimum is not required for a first-time while-armed youth offender sentenced under the YRA. See *ante* at 21-23. The majority's sole reason for affirming is that even if the lower court erred in adhering to the mandatory minimum for the while-armed offense, the error is not as clear with respect to PFCV. See *ante* at 27-28. As a result, imposition of the mandatory minimum for PFCV was not an obvious error, and because of the concurrent nature of the identical sentences imposed for the while-armed and PFCV offenses, the sentencing error with respect to the while-armed offense does not affect appellant's substantial rights. See *ante* at 28-29, 30 n.26.

---

(…continued)
who imposes a sentence pursuant to the [YRA] may suspend all or part of the sentence or impose a prison term that is shorter than the mandatory term." The Sentencing Commission expresses no view on the subject. VOLUNTARY SENTENCING GUIDELINES MANUAL § 3.6 (The District of Columbia Sentencing and Criminal Code Revision Commission 2017). It thus seems quite clear to the Sentencing Commission that Green decided the issue with respect to first-time while-armed and PFCV offenses. It should have been equally clear to the trial court in this case.

I disagree with the premise about the PFCV mandatory minimum that underlies this reasoning. As the majority observes, the PFCV statute, unlike the while-armed statute, does not on its face link to the YRA by including an exemption to the mandatory minimum for first-time youth offenders. *See* D.C. Code § 22-4504 (b). But the task of judicial interpretation requires that the PFCV statute be read in harmony with the YRA. The majority is too quick to dismiss the importance of the discretion granted to sentencing judges by the YRA, arguing that it is not *sui generis* and therefore should not supersede the mandatory minimum for PFCV. The majority equates the YRA provision dealing with probation, D.C. Code § 24-903 (a)(1), to the general discretion to grant probation afforded to judges when sentencing adults under D.C. Code § 16-710, which has been held not to override mandatory minimums required by statute. See *ante* at 25 n.22. There are several problems with this reasoning. First, the YRA, enacted in 1985, subsequent to the general probation authority in D.C. Code § 16-710, enacted in 1963, expressly provides that the "sentencing alternatives" of the YRA are "in addition to the options already available to the court." D.C. Code § 24-903 (f).[8] The statutory language of the YRA therefore precludes the notion that it is merely repeating a sentencing option already available to the trial court for non-youth

---

[8] D.C. Law No. 6-69, § 4, 32 DCR 4587 (1985); 77 Stat. 559, Pub. Law 88-241, § 1 (1963).

offenders. Second, this comparison is faulty because it overlooks that the "sentencing alternatives" of the YRA are not limited to probation and depend on whether the judge has determined that a youth offender will "derive benefit" from sentencing under the YRA. The YRA provides that when a judge determines that a youth offender *would derive benefit* from YRA sentencing but believes the youth offender should be "committed" (not placed on probation), the judge "may" impose a sentence "for treatment and supervision" up to the "maximum penalty of imprisonment otherwise provided by law." D.C. Code § 24-903 (b). It does not say that the judge must impose a mandatory minimum otherwise provided by law. It is only when a judge finds that a youth offender "*will not derive benefit* from treatment under subsection (b)," that the court "may sentence the youth offender under any other applicable penalty provision." D.C. Code § 24-903 (d) (emphasis added).[9] The trial judge in this case did not make a determination that appellant would "not derive benefit" freeing him to impose "any other applicable penalty provision." Instead he found the opposite, that appellant would derive benefit, so that the applicable provision is therefore § 24-903 (b), which allows sentencing up

---

[9] Based on the different language in sections 24-903 (b) and (d), I, therefore, disagree with the majority's assessment that "nothing in the language of the YRA itself suggests that the sentencing discretion it affords to trial judges generally supersedes statutory mandatory minimum sentences." *Ante* at 25 n.22. A comparison of the language of these subsections of the YRA suggests precisely that, in the case where the trial judge determines that a youth offender would derive benefit.

to the maximum, but does not require a minimum sentence. Such leeway follows this court's interpretation that a core purpose of the YRA is "to give the court flexibility in sentencing a youth offender according to his or her individual needs." *Holloway v. United States*, 951 A.2d 59, 64 (D.C. 2008); s*ee Veney v. United States*, 681 A.2d 428, 434-35 (D.C. 1996) (en banc). To require the imposition of a mandatory minimum prison sentence when a judge has determined that a youth offender would benefit from rehabilitative sentencing undermines the judicial discretion and flexibility at the heart of the YRA. As the government argued in *Green*, any statutory ambiguity as to whether mandatory minimums apply to youth offenders sentenced under the YRA should be resolved against mandatory minimums by application of the rule of lenity. *See Holloway*, 951 A.2d at 65 (applying the rule of lenity in interpreting the YRA where there are "two reasonable constructions") (quoting *United States Parole Comm'n v. Noble*, 693 A.2d 1084, 1103-04 (D.C. 1997) *aff'd on reh'g*, 711 A.2d 85 (D.C. 1998) (en banc) ("The rule of lenity . . . can tip the balance in favor of criminal defendants only where, exclusive of the rule, a penal statute's language, structure, purpose and legislative history leaves its meaning genuinely in doubt." (internal quotation marks omitted))).[10]

---

[10] As the majority recognizes, the Council is aware of the issue of whether mandatory minimums apply to youth offenders. See *ante* at 27 n.24. I read the

(continued…)

Finally, there is an anomaly in concluding that the while-armed statute does not require a mandatory minimum for first-time youth offenders, but the PFCV statute does. The incongruity arises because the maximum sentences for the two offenses makes it evident that while-armed offenses are deemed to be more serious than PFCV offenses, as the former may be punished by significantly greater periods of imprisonment, up to life without possibility of parole, and the latter up to 15 years.[11] When interpreting statutes, we should do so contextually, with a view to a coherent whole, *see Galbis v. Nadal*, 626 A.2d 26, 32, n.10 (D.C. 1993), and avoid interpretations that would result in nonsensical results. *Moten v. United States*, 81 A.3d 1274, 1277 (D.C. 2013) ("[I]f a literal interpretation of the statute would lead to an absurd result, the court will follow the legislative intent despite literal wording." (internal quotation marks omitted)). It makes little sense to

---

(…continued)
Council's comments and actions as indicating that they do not apply. But, at a minimum, the comments add to the ambiguity surrounding the question, which calls for application of the rule of lenity.

[11] In the case of a while-armed offense, an enhancement from 30 years to life imprisonment without possibility of parole may be added to the sentence, depending on the underlying crime. D.C. Code § 22-4502 (a). The maximum sentence for PFCV is much less, 15 years, in addition to the sentence for the accompanying "crime of violence." D.C. Code § 22-4504 (b).

exempt appellant from a mandatory minimum for a while-armed offense yet require it for PFCV. [12]

Having decided that we are bound to follow the court's correct decision in *Green*, it is easy to conclude that appellant's substantial rights were affected by the trial court's failure to recognize that discretion was permitted in sentencing him as a youth offender under the YRA. That showing, of a "reasonable likelihood" that the error affected the outcome, is "slightly less exacting" in the sentencing context than is required for trial errors. *United States v. Terrell*, 696 F.3d 1257, 1263 (D.C. Cir. 2012); *United States v. Saro*, 24 F.3d 283, 288 (D.C. Cir. 1994) (referring to a "somewhat lighter" burden of showing prejudice in the sentencing context). That burden is met in this case, where the record makes clear that the trial judge made a finding that appellant would benefit from rehabilitative treatment, noting that because sentencing was done under the YRA, appellant had

---

[12] The majority dismisses this glaring sentencing disparity, without any attempt at a reasonable or logical explanation. We have previously stated that the disparity in maximum sentence between the two offenses is a reflection of the fact that the while-armed statute is "very broad" in scope whereas conviction for PFCV may be based on less evidence, of possession including constructive possession, while conviction for a "while-armed" offense requires evidence of greater engagement with the weapon. *See Thomas v. United States*, 602 A.2d 647, 651, 654 (D.C. 1992). This further supports the notion that if the mandatory minimum sentence for while-armed offenses does not supersede the YRA, neither does the mandatory minimum for PFCV.

the ability to remove the conviction from his record after successfully completing the conditions of supervised release. However, the record is also clear that the judge believed his hands were tied when it came to sentencing and that he had to impose a mandatory minimum because "[i]t is what [the] [C]ity [C]ouncil said is appropriate under the circumstances." The trial judge expressed his discomfort with that requirement, commenting that sentencing was made "difficult" because of the minimum sentences. He commented that "in some respect maybe the mandatory minimum is a little too harsh," but continued to indicate his lack of choice by noting "but it is the mandatory minimum." Upon examining the record, there is a solid foundation to conclude that not only did the trial judge not exercise discretion and imposed the mandatory minimum that he thought was statutorily required, but also that he very well might have exercised discretion to impose a lesser sentence had he known it was permitted. To the extent that we do not know for certain what the trial judge would have done if he thought he could depart from the mandatory minimums, remanding for resentencing would allow the judge to exercise the discretion afforded by the YRA.

Finally, a failure to exercise discretion in this case, contrary to the mandate of the YRA, and contrary to the disposition in *Green*, would "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." *Lowery v. United*

*States*, 3 A.3d 1169, 1173 (D.C. 2010) (internal quotation marks omitted); *see United States v. Olano*, 507 U.S. 725, 732 (1993). As the District of Columbia Circuit has held in the analogous area where a sentencing judge imposed a sentence pursuant to the erroneous belief that the Sentencing Guidelines are mandatory and must be applied, the fourth prong is met "whenever the third — prejudice to substantial rights — exists." *United States v. Gomez*, 431 F.3d 818, 822 (D.C. Cir. 2005); *Terrell*, 696 F.3d at 1264 (same, where sentencing judge imposed sentence under erroneous belief that certain conditions had to be met to impose a below-Guidelines sentence). In this case, there is further cause to be concerned that the "fairness, integrity and public reputation" of this court's proceedings will be affected if the same relief afforded the youth offender in *Green* is not accorded to appellant. *See M.A.P.*, 285 A.2d at 312.

For these reasons I would remand the case for resentencing.