**Edward T. FARLEY, Appellant,**

v.

**UNITED STATES, Appellee.**

Nos. 92–CF–1039, 95–CO–488.

District of Columbia Court of Appeals.

Argued Oct. 18, 1996.

Decided May 22, 1997.

David Jonathan Sitomer, appointed by this court, for appellant.

Magdalena A. Bell, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY, KING, and RUIZ, Associate Judges.

RUIZ, Associate Judge.

Appellant, Edward T. Farley, was convicted by a jury of distribution of cocaine while armed, possession with the intent to distribute a controlled substance while armed, assault with a dangerous weapon, possession of a firearm during a crime of violence or dangerous offense, and carrying a pistol without a license.

Farley contends that the trial court committed error when it failed to require that the government disclose *Brady*[1] material, given to the police shortly after the incident by, Dennis Miles. On appeal, Farley contends further that a complaint filed by Den-

---

1. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194,   10 L.Ed.2d 215 (1963).

nis Miles with the Civilian Complaint Review Board ("CCRB"), which first came to light during the § 23–110 hearing, also should have been disclosed under *Brady*. We remand the record to the trial court for a hearing on the *Brady* issue and the possibly related issue of the trial court's refusal to give a missing witness instruction with respect to Dennis Miles.[2]

This prosecution arose from a police drug buy and bust operation. The relevant facts on the *Brady* issue revolve around the time, immediately after the drug buy, when the police were in hot pursuit of the suspect, whom police claim was Farley, including incidents in Dennis Miles' apartment. One of the three officers in the drug buy and bust operation, Officer Johnson, was the first to pursue Farley and saw him enter the apartment at 732 Langston Terrace, N.E., where Dennis Miles lived, and slam the door shut. Officer Johnson called for backup officers and waited a few seconds for them to arrive before entering the premises. Officer Johnson testified that he and the backup officers knocked on the door, opened it (it was unlocked), and went into the apartment. Once inside, they spotted a jacket and a hat in plain view on the sofa and found Miles in his bedroom. In the jacket's pocket were papers identifying Farley by name and a medicine bottle containing cocaine. Miles' testimony at the § 23–110 hearing,[3] however, was different: he had just come out of his bedroom and was on the sofa when Ms. Cooper, Miles' girlfriend, opened the door and the police came running into his apartment, guns drawn, grabbed and threw him on the floor,[4] punching, stomping, slamming and threatening him while asking him if he had seen

Farley run through his apartment. Miles testified that he told the officers that he did not hear or see anyone running through his apartment. He further testified that the officers had brought a jacket into his living room from the outside, in direct contradiction of the police's testimony that they found the jacket on the sofa.[5] After the questioning in his apartment, Miles said he was taken to the police station where he gave a statement. Miles testified that he was also questioned by police officers, including Officer Zerega, in Miles' apartment a couple of days later. At the § 23–110 hearing, Officer Flynn testified that he questioned Miles a couple of days after the buy and bust operation. According to Officer Flynn, at that time, Miles said that he did not know how the jacket got onto the sofa, that because of his disability he frequently left his door open, and that people came in and out of his apartment. Notwithstanding Miles' testimony that he gave several statements to various police officers, one of which is confirmed by Officer Flynn, there is no documentation of any kind in the record reflecting the police's communications with Miles. At oral argument, the government stated that there are no documents recording the various statements given to the police by Miles.

Miles also testified that, in addition to the statements given to the police officers, he filed a citizen's complaint with the CCRB reporting mistreatment by the police at the time they entered his apartment in pursuit of Farley.[6] Farley argues that Miles' statements to the police and the six-page citizen's complaint constitute exculpatory *Brady* material and that, as a result of the govern-

---

2. In his direct appeal, Farley also contends that the trial court erred in a number of other unrelated rulings: denial of his motion to suppress the photo array identifications, failure to substitute trial counsel, and failure to conduct a sufficient inquiry into whether his decision not to testify was voluntary and informed. On appeal from denial of his § 23–110 motion, Farley claims that the trial court erred in finding no ineffective assistance of counsel. We perceive no error in the trial court's rulings on these issues.

3. Miles' testimony was not available at the trial because, apparently, Miles could not be found by either party.

4. Dennis Miles is a paraplegic.

5. Farley did not contest that the jacket belonged to him. Rather, his position was that the jacket had been stolen from him and that the drugs must have been placed in the jacket pocket by the person who stole the jacket.

6. The complaint specifically identifies Officer Zerega as one of the officers who came to Miles' apartment. The complaint was introduced as evidence during Miles' testimony at Farley's § 23–110 hearing and is part of the record on appeal.

ment's failure to disclose this evidence, Farley is entitled to a new trial.[7]

■ *Brady* and its progeny require the government to disclose to the defense, upon request, evidence in its possession that is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1197. However, a conviction will not be reversed on *Brady* grounds for the prosecutor's failure to disclose absent a further showing that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." *Kyles v. Whitley*, 514 U.S. 419, 441, 115 S.Ct. 1555, 1569, 131 L.Ed.2d 490 (1995). In this context, "[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).

■ On appeal, Farley argues that had Miles' statements to the police and his complaint to the CCRB been available to the defense, Miles would have been the best witness for the misidentification defense strategy because his testimony would have put the police officers' credibility[8] into question and pointed out the discrepancies in the government's case. The government, in turn, argues that since Miles' name and address and the substance of his statement to the police were disclosed to Farley, it fulfilled its *Brady* obligations. With respect to the CCRB complaint, the government contends that because it was not in possession of Miles' complaint to the CCRB and was unaware of its existence, it cannot be held responsible for failure to disclose under *Brady*. See *Martinez v. Wainwright*, 621 F.2d 184, 186 (5th Cir.1980).

■ The *Brady* issue raised by Farley could well be significant, but it is difficult to evaluate on the sparse record before us. To begin with, it is anomalous that there is no evidence in the record (or even outside the record as revealed by the government at oral argument) of any documentation whatsoever of Dennis Miles' statements to the police.[9] Further, with respect to the CCRB complaint, we cannot conclude, on this record, that the government did not violate *Brady*. It has been held that " 'the duty of disclosure affects not only the prosecutor, but the Government as a whole, including its investigative agencies.' " *Martinez, supra*, 621 F.2d at 187 n. 4 (quoting *United States v. Bryant*, 439 F.2d 642, 650 (D.C.Cir.1971)). Furthermore, even when the prosecution may not know about certain evidence, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles, supra*, 514 U.S. at 437, 115 S.Ct. at 1567. As stated in *Kyles*, there is no doubt that police investigators sometimes fail to inform the prosecution of all they know, but neither is there a doubt that " 'procedures and regulations can be established to carry the [prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it.' " *Id.* at 438, 115 S.Ct. at 1568 (quoting *Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972)).

The procedures of the CCRB set forth in the D.C. Municipal Regulations[10] pursuant

---

**7.** Farley filed a Motion to Compel Discovery requesting the "identity of the officer and/or officers that were provided with exculpatory information by Dennis Miles." The government responded by letter that they had previously provided defense counsel with Miles' name, address and the substance of his statement and assured counsel that the officers who heard the statement would be available at the time of trial. The officers who comprised the buy and bust team and the arrest team were available at trial; however, the single officer identified by name in Miles' citizen's complaint, Officer Zerega, did not testify.

**8.** The police's credibility or bias is of crucial importance to Farley's case considering that he was arrested based solely on the officers' identification made from a photo array.

**9.** Considering that Miles was potentially an important witness to both the government and the defense, it is troubling that the record reflects that only minor attempts were made to locate him.

**10.** 6A DCMR §§ 2100–2199 (1988).

to D.C.Code § 4–903(b),[11] require that an officer accused in a complaint to the CCRB be given notice of such an accusation.[12] If after investigation, the Board finds evidence of criminal conduct, the U.S. Attorney is notified of the citizen's complaint.[13] Thus, depending on the Board's evaluation of Miles' citizen complaint, at least the police, and perhaps the U.S. Attorney's office, should have been notified of Miles' complaint. At a minimum, because Officer Zerega[14] was named in Miles' complaint to the CCRB, under the regulations Officer Zerega should have received notice of the complaint filed against him within seven days of the filing of the complaint. In light of this requirement, we assume, for present purposes, that Miles' complaint was in fact forwarded to Officer Zerega.[15] Therefore, as pursuant to *Kyles* the government is responsible for knowing what the police know, it may be that the government should be imputed with knowledge of Miles' complaint to the CCRB.[16]

Evidence of Miles' complaint to the CCRB, if introduced at trial, may have led the jury to question the officers' credibility, creating a reasonable doubt about their identification of Farley as the person involved in the drug buy and bust. It also may have influenced the trial court's decision not to give a missing witness instruction concerning the absent Dennis Miles. Unfortunately, the record was not sufficiently developed during the § 23–

110 hearing to provide a sound basis for our evaluation of the government's obligation to disclose the CCRB complaint under *Brady*, the impact of the CCRB complaint on the lack of documentation on Miles' statements to the police, or the materiality of the undisclosed information in relation to other evidence adduced at trial. Therefore, we remand the record to the trial court for a hearing and determination of whether Miles' complaint to the CCRB was *Brady* material and, if so, whether had it been disclosed to the defense, there is a possibility that the result of the trial would have been undermined. Under the circumstances, we also hereby instruct the trial court to appoint new counsel for Farley.

*So ordered.*

KING, Associate Judge, concurring in the result:

Because the possible relevance of the complaint filed by Miles with the Civilian Complaint Review Board was first raised by appellate counsel[1] in the brief on appeal, there is nothing in the record relating to the question of whether that complaint might be producible under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Therefore, I do not object either to a remand to permit an appropriate record to be made

11. D.C.Code §§ 4–901—4–910 (1994) were repealed on September 26, 1995. D.C.Law 11–52, § 803(a), 42 DCMR 3684.

12. 6A DCMR § 2105.3 provides as follows:
A copy of each complaint which is not frivolous on its face, as determined by the Executive Director in consultation with the Chairperson or Vice–Chairperson in the absence of the Chairperson, shall, in the absence of unusual circumstances, be transmitted by certified mail within seven (7) days of its filing to the subject police officer.

13. 6A DCMR § 2105.7 provides as follows:
When, in accordance with § 4(d) of the Act, the Board finds that the record indicates any probability that the alleged misconduct was criminal in nature, the Board shall refer the complaint to the United States Attorney for the District of Columbia. Records of the transfer shall be maintained and the disposition of action determined and recorded.

14. Officer Zerega is one of the investigators who visited Miles a couple of days after the drug buy and bust operation to ask him follow-up questions. Officer Zerega did not testify at trial.

15. Based on the evidence of record, we cannot say that Miles' citizen complaint is "frivolous on its face." Further, no representation or proffer has been made that Officer Zerega did not receive a copy of the CCRB complaint. 6A DCMR § 2105.3.

16. We do not now decide whether such knowledge would be imputed to the government if Officer Zerega did not, in fact, receive a copy of Miles' CCRB complaint, or whether knowledge by the CCRB would suffice to impute knowledge by the government.

1. The same counsel also represented appellant in the D.C.Code § 23–110 hearing.

on that point or to a direction to the trial court to appoint new counsel.