**Robert GUEST, A/K/A Robert Gest, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 02–CF–1203.

District of Columbia Court of Appeals.

Submitted Dec. 4, 2003.

Decided Jan. 27, 2005.

 

Joanne Vasco, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Barbara J. Valliere, Ian P. Alberg, and Denise A. Simmonds, Assistant United States Attorneys, were on the brief for appellee.

Before WAGNER, Chief Judge, and TERRY and WASHINGTON, Associate Judges.

TERRY, Associate Judge.

After a jury trial, appellant was convicted of distributing cocaine. On appeal he makes a twofold claim under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). First, he contends that he was denied due process because the trial court failed to ensure that the government complied with his *Brady* request. Second, he maintains that the *Brady* information that he sought was material to his case. We hold that there was no

*Brady* violation because the information that appellant sought was not in the possession of the government. We therefore affirm appellant's conviction without reaching his materiality claim.

I

A. *The Underlying Facts*

In the early morning hours of August 18, 2001, appellant, Robert Guest,[1] was arrested for selling cocaine to Officers John Haines and James Koenig of the Metropolitan Police. The officers were working undercover, wearing plain clothes and driving an unmarked truck. They were patrolling an area in Southeast Washington where several nightclubs are located, on the lookout for "aggressive panhandlers,"[2] auto thefts, and robberies. Appellant approached the officers twice in the 100 blocks of K and L Streets, S.E., both times asking if they were interested in buying cocaine. Before approaching the officers' truck for the second time, appellant had been walking with two other men, later identified as Michael Simpson and Michael Scott. After the officers agreed to buy cocaine during the second encounter,[3] appellant motioned to Simpson, who was standing across the street. Simpson then came over and dropped a pink ziplock bag containing cocaine into the cab of the truck.[4] After calling for backup, Officer

1. Appellant's surname is spelled "Gest" in the indictment; elsewhere in the record it appears as both "Gest" and "Guest." He states in his brief that the correct spelling is "Guest."

2. According to the testimony of Officer Haines, aggressive panhandlers are individuals who attempt to "charge [people] to park on public space."

3. The officers were not prepared to get involved in a drug deal when appellant first

asked them if they were interested in buying cocaine. Officer Haines testified that he had never been part of an undercover narcotics operation, and that he was focused on arresting aggressive panhandlers when appellant first approached him.

4. Officer Haines testified that he immediately recognized the substance in the bag as crack cocaine. A field test and a later laboratory analysis both confirmed that in fact it was cocaine.

Haines arrested appellant and Simpson.[5] Scott, who did not interact with the officers in any way, was initially stopped and questioned, but was released without being charged.

## B. *The Brady Request*

About a month before trial, defense counsel wrote a letter to the prosecutor requesting, in addition to "all the discovery materials you have provided" (for which she expressed her thanks), that the government disclose (1) Michael Scott's criminal record, (2) Scott's "history of dealings with law enforcement authorities in relation to these 8/18/01 arrests and any other cases," [6] (3) any information that Scott was "the source or conduit of any of the drugs" that were the subject of the pending indictment, and (4) "any information that . . . Scott is known or was known in 2001 to police as a purveyor of cocaine." Such information, counsel wrote, "looks to me like *Brady*."

During a motion hearing just before the trial began, defense counsel told the court that the government had not complied with her *Brady* request. The prosecutor explained to the court that, after running Scott's name through the government's computers, the only information he was able to find was the police report in this case (Form PD–163) stating that Scott was present at the scene, which counsel already had. The prosecutor added that the officers had questioned Scott at the scene, but he was released because they deter-

mined that he had no apparent connection to the drug deal. The court concluded that if defense counsel had the police report, the government "didn't suppress anything," and. ruled that "the government's disclosures [were] sufficient to deal with the specific *Brady* request." Nevertheless, the court suggested that the prosecutor make further inquiry of the officers, run a records check for Scott's last known address, and provide, if available, any information concerning Scott's address or criminal history. The prosecutor said he had already spoken to the officers "and they did not recall getting that information from him," but he agreed to "investigate about it a little further." The proceedings were then adjourned for the weekend.

The following Tuesday, after the jury had been selected and sworn, defense counsel again informed the court at a bench conference that the government still had not furnished Scott's address.[7] The court responded, "I can't create evidence out of non-evidence. All I can do is put the government to its constitutional obligation . . . to make sure that [if] they have any information which could be exculpatory [under] *Brady*, [and if] it's material, that they disclose it." The prosecutor also stated that he had talked with and examined the notebooks of "every officer" who was on the scene, and that none of the officers even remembered Scott until the prosecutor pointed out his name in the PD–163.

---

5. Simpson, charged as a co-defendant, was tried with appellant and was convicted of distributing cocaine and possessing marijuana. He did not note an appeal from his conviction.

6. Counsel's letter also asked "specifically whether and under what circumstances [Scott] has failed to comply with requests' for information by prosecutors, police, or other agents including probation officers. I de-

mand to know all promises and assurances to him . . . ."

7. The previous day, before jury selection began, defense counsel told the court that the government had not yet provided Scott's address. The prosecutor replied that the only information he had about Scott was the police report, which listed only Scott's name. There was no further discussion of the matter at that time.

The trial proceeded, and at its conclusion the jury found appellant guilty of distributing cocaine.

## II

■ Appellant contends that he was denied due process, in violation of *Brady*, because the trial court failed to ensure that the government had ascertained Scott's last known address. This claim is essentially a challenge to the court's finding that the government did not possess the information that appellant sought. We conclude that the trial court's determination was not plainly wrong. *See* D.C.Code § 17–305(a) (2001). After the prosecutor explained that the only information he had about Michael Scott was the police report containing his name, but no address, the court directed the prosecutor to conduct a records check and to inquire further with the police officers who were involved in this case. He did so, but was unable to find additional information about Mr. Scott, and defense counsel made no showing that either the individual prosecutor or the government as a whole possessed any information of the type that she sought. Nor, on appeal, has appellant made any showing or proffer that the government in fact had such information.

■ In *Brady* the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. 1194. There are two requirements that must be met in order to establish a violation of *Brady*. First, the government, or those acting on its behalf,[8] must have failed "to disclose to the defense, upon request, *evidence in its possession ....*" *Farley v. United States,* 694 A.2d 887, 889 (D.C.1997) (emphasis added); *see Velasquez v. United States,* 801 A.2d 72, 81 (D.C.2002) (no *Brady* violation when the government does not possess the evidence sought); *United States v. Caicedo-Llanos,* 295 U.S.App. D.C. 99, 101, 960 F.2d 158, 160 (1992) ("*Brady* established the principle that a defendant has a due process right to request and receive evidence *in the government's possession*" (emphasis added)). Second, the undisclosed evidence in the government's possession must be "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. Materiality is the focus in most cases,[9] because *Brady* violations usually "involve[ ] the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs,* 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). This case, however, does not present the usual *Brady* scenario because the government here did not have the information that appellant sought. Therefore, because the first re-

---

8. Under *Brady,* "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995).

9. Evidence will be deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Pennsylvania v. Ritchie,* 480 U.S. 39, 57, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (quoting *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)); *see also Kyles,* 514 U.S. at 435, 115 S.Ct. 1555 (evidence is material when it "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict").

quirement was not met, we need not address materiality, the second requirement. *See In re Sealed Case,* 337 U.S.App. D.C. 332, 334, 185 F.3d 887, 889 (1999) (if the government has the *Brady* information, "the [trial] court must *then* determine whether that information is 'material' within the meaning of *Brady* and its progeny" (emphasis added)).

■ Given the record before us, we hold that there was no *Brady* violation in this case because the government did not have any additional information about Mr. Scott. *See Velasquez,* 801 A.2d at 81 (no *Brady* violation when "the government tried, without success, to find" records that were requested). If the government does not possess the requested information, there can be no *Brady* violation. *Velasquez,* 801 A.2d at 81; *Farley,* 694 A.2d at 889. Appellant has not made· even a threshold showing that the information he sought even existed or, if it did, whether it was in the government's possession. Moreover, the fact that the prosecutor, after searching his records and talking with the police, could not find the additional information that appellant requested does not mean that the government failed to satisfy *Brady.* "The *Brady* principle does not imply [the government's] duty to investigate—and come to know—information which the defendant would like to have but the government does not possess." *Lewis v. United States,* 393 A.2d 109, 115 (D.C.1978); *see Levin v. Katzenbach,* 124 U.S.App. D.C. 158, 162, 363 F.2d 287, 291 (1966) ("we do not suggest that the government is required to search for evidence favorable to the accused").

■ Finally, with respect to the actions taken by the trial court, we emphasize that

a *Brady* motion is not meant to serve as a "discovery device" that "impose[s] an undue burden upon the [trial] court" to satisfy a defendant's general request for information.[10] *Smith v. United States,* 665 A.2d 962, 969 (D.C.1995) (citation omitted); *see also Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977) ("There is no general constitutional right to discovery in a criminal case"). In this case the trial court acted appropriately when it conducted an inquiry into appellant's *Brady* request and made sure that the government performed an adequate search for the requested material. *See Kleinbart v. United States,* 426 A.2d 343, 360 (D.C.1981) ("the trial court [has] the obligation to conduct an inquiry as to the possible existence of [*Brady* material]" when defense counsel makes a *Brady* request). As we have pointed out, the fact that the requested information was not in the government's possession does not imply that the trial court failed to ensure that the government satisfied *Brady.* But once the court determined, after hearing what the prosecutor had to say, that the government did not have the information, there was nothing more for the court to do; as the court explained, it could not "create evidence out of non-evidence." The correctness of the court's ruling is reinforced by appellant's inability, both at the trial level and on appeal, to show that the information he sought was actually in the government's possession.

Appellant's conviction is therefore

*Affirmed.*

