Concurring opinion by Associate Judge McLeese at page 665.
Separate Statement by Associate Judge Thompson at page 666.
Opinion by Senior Judge Ruiz dissenting in part at page 667.
Thompson, Associate Judge:
A jury convicted appellant Darius Briscoe of armed robbery, assault with a dangerous weapon ("ADW"), and two counts of possession of a firearm during a crime of violence ("PFCV"). Appellant asserts that the government violated Superior Court Criminal Procedure Rule 16 and his rights under Brady v. Maryland[1] by failing to obtain and produce the contents of a surveillance camera attached to an apartment building located on the street where the offenses occurred, and he argues that the government should have been sanctioned for that conduct. He also argues that the trial court erred in assuming that it was required to impose the statutory five-year mandatory-minimum sentence for a "while armed" crime of violence and the same mandatory-minimum sentence for PFCV, and in failing to recognize that it could exercise sentencing discretion under the Youth Rehabilitation Act ("YRA"). Reviewing appellant's claims for plain error, we conclude that appellant is not entitled to relief. Accordingly, we affirm.
I.
Trial in this case commenced on October 8, 2015. The evidence showed that on June 21, 2015, Troy Thomas was assaulted and robbed at gunpoint by a man he later identified from a photo array as appellant. Thomas had just stopped at a convenience *654 store to bet on horse races. As he was leaving the store, he saw appellant approaching with a bicycle. As Thomas was walking home, appellant stopped him in an alleyway, pointed a handgun at him from approximately ten to fifteen feet away, and said, "I heard you been hitting them horses. Hand that shit up." Four other people then joined appellant in the alleyway, whereupon appellant ordered them to search Thomas's pockets. After the search, the group took Thomas's phone, wallet, identification cards, Metro transportation card, and sixty dollars in cash. Appellant then pulled the trigger of the handgun. When no shot fired, Thomas took off running.
Thomas, afraid to return home that night, fled to his girlfriend's home. The following morning, when he returned home, he found officers responding to a different incident on his street, informed one of them about the previous night's robbery, and described his assailant. The next day, Thomas saw appellant coming down his street on a scooter and called Detective Sean Crowley of the Metropolitan Police Department ("MPD") to report the sighting. After hearing a lookout broadcast over the radio, MPD Officer Caleb Bacon spotted appellant, whom he recognized by name, on a scooter and chased him. Appellant got away, but Officer Bacon provided information as to appellant's identity to Detective Crowley, who prepared a nine-person photo array containing appellant's picture. From that array, Thomas identified appellant as the person with the gun who had robbed him.
The government's trial evidence included video surveillance footage from a camera located outside the convenience store.[2] Thomas identified appellant in the convenience store video footage. MPD Investigator Sean Rutter testified that he had spotted a surveillance camera in the rear of an apartment building that looked into the alley where the incident occurred. However, Investigator Rutter "was not able to make contact with the homeowner" and, therefore, never received any footage the camera may have contained. Rutter also testified that he was "not sure" whether the camera "was fake" and that in his experience, "half of the time," cameras are "put up for deterrence purposes" only and do not actually work.
Appellant did not testify, but his trial counsel argued mistaken identity. Counsel told the jury that the man shown in the convenience store surveillance video looked like, but was not, appellant.
Citing Brady and Super. Ct. Crim. R. 16, appellant now asserts that "[t]he government did not preserve [the footage from the surveillance camera attached to the apartment building], and because of its failure, [he] was prejudiced," a circumstance that he contends warranted sanctions against the government. Appellant also argues that the sentence the trial court imposed was based on an "incorrect understanding of the law," because the YRA "supersedes the mandatory minimum in this case."
II.
As to appellant's Brady and Rule 16 claims, the rule that guides our analysis is that where-as here-"defense counsel fails to move for the production of evidence and does not request the imposition of sanctions against the government for failing to preserve discoverable material, the trial court's failure to sua sponte impose a sanction will only be reversed upon a finding of plain error." Sheffield v. United States , 397 A.2d 963, 968 (D.C. 1979).
*655 Where no objection was made during the sentencing proceeding, this court applies plain-error review to a claim that the trial court erroneously believed that the sentence it imposed was mandatory. See Veney v. United States , 738 A.2d 1185, 1198 (D.C. 1999). The plain error test requires that there "be (1) 'error,' (2) that is 'plain,' and (3) that 'affects substantial rights.' " Johnson v. United States , 520 U.S. 461, 466-67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) (internal brackets omitted) (quoting United States v. Olano , 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ). "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. at 467, 117 S.Ct. 1544 (internal quotation marks and brackets omitted).
Our review of questions of statutory interpretation is de novo . Peterson v. United States , 997 A.2d 682, 683 (D.C. 2010).
III.
We can dispose of appellant's first claim summarily. To establish a Brady violation, an appellant must first show that the information the government failed to produce was in its possession; "[i]f the government does not possess the requested information, there can be no Brady violation." Guest v. United States , 867 A.2d 208, 212 (D.C. 2005). "The Brady principle does not imply the government's duty to investigate-and come to know-information which the defendant would like to have but the government does not possess." Id. (internal brackets omitted) (quoting Lewis v. United States , 393 A.2d 109, 115 (D.C. 1978) ). Rule 16 similarly requires the government to produce certain items "if the item is within the government's possession, custody, or control." Super. Ct. Crim. R. 16 (a)(1)(E). "If [the requested item was not ever within the government's possession], there can be no Rule 16 violation." Myers v. United States , 15 A.3d 688, 690 (D.C. 2011).
Here, appellant has failed to show that the government was ever in possession of any contents of the video camera attached to the apartment building. The only pertinent evidence in the record was the testimony of Investigator Rutter, who testified that he "was not able to make contact with the homeowner" to obtain any video footage the camera might have captured, that he did not even know whether the camera was "fake," and that in his experience, video surveillance cameras frequently do not work and are mounted solely for their deterrent effect.[3] Further, the government had no duty under the Due Process Clause or under Rule 16 to take steps to investigate and obtain any video footage the camera, which the government did not possess or control, might have contained. See Guest , 867 A.2d at 212 ; cf. Koonce v. District of Columbia , 111 A.3d 1009, 1016 (D.C. 2015) (stationhouse video of person arrested for DUI must be preserved under Rule 16 ). Accordingly, we have no basis for concluding that the government violated Brady or Rule 16 by not producing any evidence from that camera and, likewise, no basis for concluding that the trial court plainly erred by not sanctioning the government.[4]
*656 IV.
A.
During the sentencing proceeding, defense counsel said that "[t]here are guidelines that are before the [c]ourt[,]" but urged the court to "consider the sentence under the [YRA]," telling the court that he hoped appellant would be allowed "to have Your Honor sign an order of expungement should the [c]ourt go along the lines [counsel was] requesting." The prosecutor said that the government would "rest largely" on its Memorandum in Aid of Sentencing, which-citing appellant's "substantial criminal history" and asserting that his conduct was "only getting more violent"-recommended that appellant be sentenced to consecutive sentences of sixty months of imprisonment and three years of supervised release for his robbery while armed and PFCV convictions, and to a concurrent sentence of twenty-four months' imprisonment and three years of supervised release for the ADW conviction. The prosecutor told the court that the government "defer[red] to the [c]ourt" "in reference to the Youth Act."
Before announcing appellant's sentence, the court cited appellant's record of prior convictions (referring to "all ... the other cases that [appellant] had") and also noted the "really hard impact" of appellant's offenses on victim Thomas. In addition, the court emphasized that it took a period of being locked up for appellant (who earned his GED while in jail awaiting trial and sentencing) to "apply [him]self." The court said that it would adhere to the voluntary sentencing guidelines with respect to "when consecutive sentencing is appropriate," noting that consecutive sentencing would be appropriate had there been multiple victims or offenses occurring at different times. The trial judge then stated the following:
The sentencing is difficult in this case, in large part because there's a mandatory minimum attached to this because there is a firearm used. But ... I don't see any value going above the mandatory minimum in this case. And in some respect maybe the mandatory minimum is a little too harsh but it is the mandatory minimum. It is what [the] city coun[cil] said is appropriate under the circumstances.
The court sentenced appellant to concurrent sentences of sixty months of imprisonment and three years of supervised release for his robbery while armed and PFCV convictions and imposed a concurrent sentence of thirty months' imprisonment and three years of supervised release for the ADW conviction. The court said that "[t]he sentence will be under the Youth Act so that [appellant would] have the ability if [he could] successfully complete all this to remove it from [his] record." The Judgment and Commitment Order states that the sentences were imposed under, and that appellant was to be "[c]ommitted pursuant to," D.C. Code § 24-903 (b), (c) (providing for "treatment and supervision pursuant to this subchapter up to the maximum penalty of imprisonment otherwise provided by law" if the court "determines that the youth offender will derive benefit from the provisions of this subchapter").
B.
Appellant reads the sentencing transcript to suggest that the trial court might have imposed a less "harsh" sentence had it understood that it was free to do so. Appellant contends that the court was free *657 to do so and erred in assuming that it was compelled to impose the five-year mandatory-minimum sentence established by D.C. Code §§ 22-4502 (a)(1) and - 4504 (b) (2012 Repl.) for his convictions of armed robbery and PFCV, respectively.
Although defense counsel urged the trial court to proceed under the YRA to make expungement possible, he never argued that the court had discretion not to impose the mandatory-minimum sentences under those statutes. Counsel's Memorandum in Aid of Sentencing simply sought "a lenient sentence pursuant to the [YRA]" and "the minimum permissible sentence pursuant to the [YRA]." Further, counsel told the court during the sentencing proceeding that "whether the [c]ourt gives him a [YRA] sentence or not[,]" he was "willing to accept the judgment of the [c]ourt."[5] Even though counsel had reviewed (and referred in his Memorandum in Aid of Sentencing to) the Presentence Report ("PSR"), and even though the PSR referred to the five-year mandatory-minimum sentences for robbery while armed and PFCV, appellant's Memorandum in Aid of Sentencing said nothing about whether those minimum sentences were applicable. And although appellant now argues that "[i]t was obvious at sentencing that the trial court was under the misimpression that it had to sentence [him] to the mandatory minimum," his counsel made no objection when the court said that sentencing was difficult "because there's a mandatory minimum attached to this because there is a firearm used." Counsel also did not object to imposition of the mandatory-minimum sentence even when, after announcing the sentence, the court said to him, "anything else?" Accordingly, our analysis is for plain error.
In support of his claim of error, appellant cites footnote 43 in Green v. United States , 974 A.2d 248 (D.C. 2009). That footnote accompanies a sentence in the text of the opinion that states that the court "remand[s] this case for resentencing." Id. at 262. The footnote explains that "Mr. Green requests, and the government does not oppose, a remand for re-sentencing." Id. at 262 n.43. The footnote further explains that the trial court "imposed mandatory minimum terms" "at the government's request," but that "[i]n light of its review of the legislative history of the DCYRA, ... 'the government ... [now] accedes to appellant's claim that the five-year mandatory minimum terms required by D.C. Code §§ 22-4502 (a) and - 4504 (b) do not have to be imposed when sentencing under the DCYRA.' " Id. at 262 & n.43 (brackets in the original).[6] The government now asserts that "[o]n further reflection, we have concluded that our prior concession [in Green ] was incorrect."
In Green , this court remanded for resentencing without giving any specific instructions to the trial court. At most, this court "merely accepted"[7] the government's "acced[ing]" to Green's claim that the five-year *658 mandatory minimum terms required by D.C. Code §§ 22-4502 (a) and - 4504 (b) do not have to be imposed when the trial court imposes a sentence under the YRA, and did not independently analyze the issue. Given these circumstances, we agree with the government that we are not bound by the government's "concession" in Green with respect to an issue that was not actually decided by the court. See Daly v. District of Columbia Dep't of Emp't Servs. , 121 A.3d 1257, 1262 (D.C. 2015) (explaining that the interpretation the court applied in an earlier case was "not binding precedent, given the [petitioners'] concession in that case");[8] United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc. , 207 F.3d 1193, 1199-1200 (10th Cir. 2000) (declining to accord precedential weight to a panel decision that assumed, but did not explicitly decide, that the court had jurisdiction, even though the jurisdictional issue was necessary to the holding in that prior case; stating, "[i]n order for a decision to be given stare decisis effect with respect to a particular issue, that issue must have been actually decided by the court" (quoting 18 James Wm. Moore, et al., Moore's Federal Practice § 134.04[5] (3d ed. 1999) ) ). Green "stands for the propositions it established[,] not for the propositions conceded by the parties." In re Coats , 173 Wash.2d 123, 267 P.3d 324, 332 (2011) (en banc). For that reason, and because "the proper administration of the criminal law cannot be left merely to the stipulation of parties," Young v. United States , 315 U.S. 257, 259, 62 S.Ct. 510, 86 L.Ed. 832 (1942), we analyze the issue afresh.
We have said that we cannot find error that is "obvious or readily apparent"-i.e., plain-"where this court has not spoken on the subject." Cartledge v. United States , 100 A.3d 147, 150 (D.C. 2014) (internal quotation marks omitted). There could, however, be situations where a statute is so clear on its face that a decision of this court is unnecessary to make it "obvious" what the correct interpretation is. And, in appropriate contexts, our review for plain error entails considering whether there is "authority that appears to be to the contrary[.]" Alexander v. United States , 116 A.3d 444, 449 n.5 (D.C. 2015).[9] Here, in light of the government's previous concession, based upon its "review of the legislative history" of the YRA, that the five-year mandatory-minimum terms required by §§ 22-4502 (a) and - 4504 (b)"do not have to be imposed" when the Superior Court sentences a youth offender under the YRA, Green , 974 A.2d at 262 n.43, we deem it appropriate to analyze any statutory language or legislative history that may compel that conclusion (or the contrary conclusion the government now urges).
The YRA provides, in pertinent part, that "[i]f the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation." D.C. Code § 24-903 (a)(1) (2012 Repl.).[10] The YRA further *659 provides that "[i]f the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may sentence the youth offender for treatment and supervision pursuant to this subchapter up to the maximum penalty of imprisonment otherwise provided by law." D.C. Code § 24-903 (b). D.C. Code § 24-903 (f) explains that § 24-903"provide[s] sentencing alternatives in addition to the options already available to the court."
In contrast, D.C. Code § 22-4502 (which for convenience we will call the "while-armed statute") provides in pertinent part that "[a]ny person who commits a crime of violence, or a dangerous crime in the District of Columbia when armed with ... any pistol or other firearm ... shall ... be imprisoned for a mandatory-minimum term of not less than 5 years[.]" D.C. Code §§ 22-4502 (a), (a)(1).[11] Further, D.C. Code § 22-4502 (c) provides that a defendant found to have been "armed with any pistol or firearm" and sentenced under § 22-4502 (a)(1)"shall not be released, granted probation, or granted suspension of sentence, prior to serving [such] mandatory-minimum sentence."[12]
The PFCV statute, enacted in 1990 through D.C. Law 8-120 (see 37 D.C. Reg. 24), similarly provides in pertinent part that upon conviction of possession of a firearm or imitation firearm while committing a crime of violence, a defendant "shall be sentenced to imprisonment for a mandatory-minimum term of not less than 5 years and shall not be released on parole, or granted probation or suspension of sentence, prior to serving the mandatory-minimum sentence." D.C. Code § 22-4504 (b).
The government contends that the trial court did not err, plainly or otherwise, in sentencing appellant to five-year, mandatory-minimum terms of imprisonment for armed robbery and PFCV because "[t]he statutory provisions setting the mandatory minimums for both offenses make explicit that the mandatory sentences must be imposed and served, notwithstanding the YRA."[13] We disagree with the government's assertion that the while-armed and PFCV statutes are "explicit" to that effect. Neither statute's mandatory-minimum sentence provision contains the strong "[n]otwithstanding any other provision of law"
*660 language that led us to conclude "inescapabl[y,]" in Peterson v. United States , 997 A.2d 682, 684-85 (D.C. 2010), that the YRA's authorization of sentencing alternatives did not permit the trial court to suspend imposition or the execution of the seven-year mandatory-minimum sentence required by the carjacking statute, D.C. Code § 22-2803 (c) (2001).[14] Somewhat to the same point, neither statute contains the strong "notwithstanding" clause that the Council adopted when it passed the Comprehensive Youth Justice Amendment Act of 2016, D.C. Law 21-0238 (effective Apr. 4, 2017) (the "CYJAA"), codified at D.C. Code § 24-403.01 (c)(2) (West 2017), providing that "[n]otwithstanding any other provision of law, if the person committed the offense for which he or she is being sentenced under this section while under 18 years of age ... [t]he court may issue a sentence less than the minimum term otherwise required by law." § 24-403.01 (c)(2)(A).
In any event, the issue before us is not whether the trial court was plainly correct in (apparently) assuming that it lacked discretion to sentence appellant to less than the mandatory minimums prescribed by the while-armed and PFCV statutes, but whether the court was plainly wrong if it assumed that it was bound to apply the mandatory minimums.[15] For us to conclude that the trial court was plainly wrong, its (putative) error in assuming that the mandatory minimum applied "must be so clear or obvious that it could not be subject to any reasonable dispute."
*661 United States v. Courtney , 816 F.3d 681, 684 (10th Cir. 2016) (citing Puckett v. United States , 556 U.S. 129, 135, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) ).
With respect to the while-armed statute, D.C. Code § 22-4502, the language of that statute[16] and the legislative history of the YRA both provide support for appellant's claim of error. As pertinent here, D.C. Code § 22-4502 (e)(1) provides that "Subchapter I of Chapter 9 of Title 24 [i.e. , the YRA] shall not apply with respect to [inter alia ] any person ... convicted more than once of" a while-armed crime of violence or dangerous crime. Under the expressio unius, exclusio alterius canon of statutory construction,[17] the strong implication of § 22-4502 (e)(1) is that the YRA is applicable to a youth offender such as appellant, convicted for the first time of robbery while armed.
The government would have us read § 22-4502 (e)(1) to mean that (1) all of the benefits of the YRA (including alternative sentencing options and expungement) must be denied to an offender described there, while (2) for an offender convicted for the first time of robbery while armed, the conviction may eventually be set aside pursuant to the YRA, but the five-year mandatory-minimum sentence nonetheless applies. At least arguably, that reading is inconsistent with the legislative history of the YRA.[18] The Committee on the Judiciary Report accompanying the legislation that became the YRA includes the following statements:
[The legislation] provides that a youth offender who is convicted of a second armed offense is ineligible for sentencing under the act . Also, a youth offender convicted of murder (including felony murder) is precluded from benefiting from the rehabilitative sentencing options of the act.
D.C. Council, Report on Bill 6-47 at 3 (June 19, 1985) (the "YRA Report") (emphasis added).[19] The Committee's focus on exclusions from "sentencing under the act" and from the "sentencing options of the act" for second-time violence-while-armed offenders and offenders convicted of murder while armed, and not just on such offenders' ineligibility for the conviction-set-aside opportunity the YRA provides, arguably supports reading § 22-4502 (e)(1) to imply that youth offenders not described there-including appellant, who was convicted for the first time of a while-armed crime of violence (robbery)-may be sentenced under the YRA rather than in accordance with the mandatory minimum.[20]
*662 For the foregoing reasons, appellant possibly has (and for purposes of our analysis, we can assume he has) the better of the argument regarding whether the trial court erred if it assumed that it was required to sentence him to at least the mandatory-minimum sentence under § 22-4502 (a)(1) for robbery while armed.
We cannot reach that conclusion as to the mandatory-minimum sentence under the PFCV statute, however. Unlike the while-armed statute, the PFCV statute, § 22-4504 (b) -which "create[d] a new offense" unknown at the time the YRA was enacted-includes no provisions that, by implication, exclude any category of offenders from its mandatory-minimum sentence provision.[21] D.C. Council, Report on Bill 8-185 at 3 (Dec. 4, 1989) (the "PFCV Report"); see also id. at 2 (stating that Bill 8-185 "would establish a mandatory 5 year prison term for anyone convicted of committing a felony while possessing ... a firearm or imitation firearm") (emphasis added). Nor does the legislative history of the PFCV statute's mandatory-minimum sentence provision (which, again, was enacted years after the YRA) contain any language expressing an intent by the Council to permit trial judges to exercise their discretion under the YRA to avoid sentencing a youth offender to at least the PFCV mandatory minimum, or any language reflecting that the Council considered the interplay between the PFCV statute and the YRA.[22] See generally PFCV Report. Arguments might be made that the same *663 YRA sentencing discretion should be available to the trial court in sentencing a youth offender convicted of PFCV as is available in concurrently sentencing the youth offender for having committed robbery (or another crime of violence or dangerous crime) while armed with a firearm. Indeed, our dissenting colleague suggests that requiring a mandatory-minimum sentence under the PFCV statute while not requiring a mandatory minimum for the same defendant under the while-armed statute seems "nonsensical." Post at 673. "What we must decide, however, is not whether the legislature ... ought to treat the two situations interchangeably, but whether it has done so." Edwards v. United States , 583 A.2d 661, 668 (D.C. 1990).
The PFCV Report explains that the PFCV statute was enacted in response to the "record number of homicides committed with firearms" in 1988 and the "[c]ontinued increases in homicides and violent assaults ... attributable to the increase in the availability of firearms" despite the District's having "one of the most stringent gun control laws in the nation[.]" PFCV Report at 1. The legislation was intended "to help the District deal with the deadly threat to public safety posed by persons ... who commit offenses while armed with ... firearms[.]" Id. Thus, the legislators' view was that existing legislation establishing penalties for offenses committed while armed with a firearm was not sufficiently effective and needed "help."[23] The Council passed the legislation despite an objection that "with respect to crimes of violence, application of a mandatory minimum sentence of five years is superfluous[.]" PFCV Report at 8 (summary of testimony of Kim A. Taylor, Director, Public Defender Service). In light of that history, we have no basis for concluding that the trial court here was plainly in error if it assumed it was required to impose the PFCV mandatory minimum.[24]
*664 In short, appellant's argument that the trial court plainly erred in assuming that he was inescapably subject to the PFCV mandatory-minimum sentence fails. For that reason, we must uphold appellant's sixty-month sentence for PFCV. That being the case, we must also conclude that appellant is not entitled to relief with respect to the sixty-month mandatory minimum the trial court believed it was required to impose for his robbery while armed conviction, because appellant cannot show that his substantial rights were affected by the (assumed) error.
To be sure, the Supreme Court has stated that "[w]here ... the record is silent as to what the [trial] court might have done had it considered the correct [sentencing] range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights." Molina-Martinez v. United States , --- U.S. ----, 136 S.Ct. 1338, 1347, 194 L.Ed.2d 444 (2016) ; see also United States v. Head , 817 F.3d 354, 361 (D.C. Cir. 2016) ("In the sentencing context, an error affects a defendant's substantial rights where there is a reasonable likelihood that the sentencing court's obvious errors affected his sentence." (internal quotation marks omitted) ). That general principle is inapplicable here because the court imposed concurrent sixty-month sentences for PFCV and robbery while armed. For that reason, even if we assume that the court plainly erred in assuming that appellant was subject to the while-armed mandatory minimum, we must conclude that allowing the sixty-month sentence for armed robbery to stand will not prejudice appellant, given that he must serve the sixty-month sentence for PFCV.[25] For the same reason, we cannot say that allowing the sentence to stand will seriously affect the fairness, integrity, or public reputation of the judicial proceedings.[26] Accordingly, appellant is not entitled to relief on his sentencing claim.
V.
The parties concur, and we agree, that appellant's "convictions for armed robbery and ADW merge." See Morris v. United States , 622 A.2d 1116, 1129 (D.C. 1993) ("[A]rmed robbery and assault with a dangerous *665 weapon merge where both offenses are committed against the same victim as part of the same criminal incident."). A remand is necessary for the trial court to vacate appellant's ADW conviction. See Medley v. United States , 104 A.3d 115, 133 (D.C. 2014). Resentencing is not required, because appellant's sentences for these counts are concurrent. See id.
VI.
Wherefore, the judgment of the trial court is affirmed, except that we remand for the court to vacate appellant's ADW conviction.
So ordered.

373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

The trial court observed, in comments to counsel, that the video footage "doesn't show the actual event" but tended to corroborate Thomas's testimony that appellant was outside the store.

Moreover, defense counsel acknowledged in his closing argument to the jury that "we don't know whether [the camera] was working or not."

Further, even if it is assumed arguendo that the video camera recorded the incident, "[w]e do not know whether the tape would have been exculpatory." Robinson v. United States , 825 A.2d 318, 325 (D.C. 2003). "There is no Brady violation absent a showing of materiality, i.e. ," a showing "that the missing evidence 'would have made a different result reasonably probable.' " Id. (quoting Farley v. United States , 694 A.2d 887, 889 (D.C. 1997) (citations omitted) ).

In neither his memorandum nor his argument during the sentencing proceeding did counsel urge the court to impose no sentence at all in favor of probation. He did suggest-to the contrary, at least arguably-that appellant needed a "setting" ("He just needs a setting, perhaps a mentor if the [c]ourt can arrange that").

Green argued to the trial court that the five-year mandatory-minimum terms under §§ 22-4502 (a) and -4504 (b) did not apply to sentences imposed under the YRA, thus (unlike appellant in this case) preserving the issue. In its brief in Green's direct appeal, although "continu[ing] to believe that an argument c[ould] be made that the mandatory minimum terms in [the while-armed and PFCV statutes] must be applied when imposing a period of incarceration under the [YRA]," the government asserted that there was "sufficient ambiguity" on the issue "as to render application of the rule of lenity appropriate" and stated that it would not oppose Green's request for a remand for resentencing.

United States v. Garcia-Caraveo , 586 F.3d 1230, 1234-35 (10th Cir. 2009).

In light of Daly , decided in August 2015, it would not have been plain to the trial court at sentencing in this case on December 18, 2015, that the remand for resentencing in Green , based on the government's concession about whether the while-armed and PFCV mandatory-minimum sentences applied, represented binding precedent.

Cf. United States v. Cheal , 389 F.3d 35, 49 (1st Cir. 2004) (considering legislative history of relevant statute in analyzing claim under plain-error standard); Marcia V. v. Office of Children's Servs ., 201 P.3d 496, 503-05 (Alaska 2009) (considering whether the claim of error had support in legislative history, but concluding that the argument for error was not strong enough to reverse under the plain-error standard of review).

The YRA defines a youth offender as "a person less than 22 years old convicted of a crime other than murder, first degree murder that constitutes an act of terrorism, and second degree murder that constitutes an act of terrorism." D.C. Code § 24-901 (a)(6) (2012 Repl.). The record indicates that appellant was still under twenty-two years of age at the time of sentencing.

The term "crime of violence" includes robbery. See D.C. Code § 22-4501 (1) (2012 Repl.) (incorporating the definition set forth in D.C. Code § 23-1331 (4) (2012 Repl.) ).

The mandatory-minimum provisions of § 22-4502 were enacted through a voter initiative effective June 7, 1983. See Abrams v. United States , 531 A.2d 964, 966, 966 n.3 (D.C. 1987) (citing the "District of Columbia Mandatory-Minimum Sentences Initiative of 1981 Delayed Effectiveness Amendments Emergency Act of 1983" (D.C. Act 5-10, March 9, 1983, 30 D.C. Reg. 1226-27) ). "[T]here is no [initial] legislative history." Johnson v. United States , 686 A.2d 200, 208 (D.C. 1996) (King, J., concurring).

The government also argues that "as to the narrow class of crimes covered by" §§ 22-4502 (c) and -4504 (b), the foregoing mandatory-minimum sentence provisions, rather than "the more general YRA [provisions] ... control." We need not decide the issue, but it seems at least equally reasonable to treat the YRA as the more specific statute, and the while-armed and PFCV statutes as more general ones. Cf. United States v. Stokes , 365 A.2d 615, 619 n.16 (D.C. 1976) ("It also could be argued, however, that ... the Youth Act could be regarded as the more specific of the two enactments. The Youth Act confers a liberalized sentencing alternative on a specific class of offenders, while D.C. Code 1973, § 22-2404 applies in general to those convicted of first-degree murder.").

Section 22-2803 (c) provides that "[n]otwithstanding any other provision of law, a person convicted of carjacking shall not be released from prison prior to the expiration of 7 years from the date of the commencement of the sentence, and a person convicted of armed carjacking shall not be released from prison prior to the expiration of 15 years from the date of the commencement of the sentence." See also Beale v. United States , 465 A.2d 796, 806 (D.C. 1983), overruled in part on other grounds by Winfield v. United States , 676 A.2d 1 (D.C. 1996) (en banc) (holding that where the defendant was convicted of first-degree murder under the provision now codified as D.C. Code § 22-2104 (b), the trial court correctly refused to consider probation as a sentencing alternative; reasoning that in light of the "[n]otwithstanding" language in the provision's mandatory-minimum paragraph, "it would be impossible for this court ... to authorize a sentencing judge who sentences a first degree murderer to life imprisonment then to suspend execution of this sentence and to place such defendant on probation").
On the other hand, the language in the while-armed statute-"shall not be released, granted probation, or granted suspension of sentence, prior to serving such mandatory-minimum sentence," § 22-4502 (c) -like the nearly identical language in the PFCV statute, § 22-4504 (b), is at least arguably stronger than the carjacking statute's prohibition against early "release[ ] from prison," D.C. Code § 22-2803 (c), since it forecloses not only early release but also leniency that would enable a defendant to entirely avoid a period of incarceration. The language of the while-armed and PFCV statutes thus provides some support for the government's position that the mandatory-minimum sentence each prescribes must not only be served when imposed, but also "must be imposed."

We say that the court "apparently" assumed that it was bound to apply the mandatory-minimum sentences because the court observed merely that "there's a mandatory minimum attached" to the offenses that "is what city coun[ci]l said is appropriate under the circumstances." At least arguably, the court's reference to the sentence the Council thought appropriate was in recognition of the court's obligation to impose a sentence that "[r]eflects the seriousness of the offense[.]" D.C. Code § 24-403.01 (a)(1) (2012 Repl.). We note also that the court had received the PSR report that referred to the mandatory-minimum sentences but that also presented for the court's information appellant's "criminal history score" and the applicable "guideline compliant sentence," which was 48 to 96 months for the robbery-while-armed and PFCV offenses.

Our analysis of the interplay between the YRA and §§ 22-4502 and -4504 starts "where all such [statutory construction] inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enters., Inc. , 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) ("[W]here ... the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.' ") (citation omitted) ).

See Andrus v. Glover Constr. Co ., 446 U.S. 608, 616-17, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980) ("Where [the legislature] explicitly enumerates certain exceptions to a general prohibition [or rule], additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.").

Notably, the YRA amended § 22-4502 (e)(1) to substitute a reference to the YRA for a previous reference to the Federal Youth Corrections Act, its predecessor statute, showing that the Council was focused on the interplay between the YRA and § 22-4502.

These statements are all the more significant given that the Council was urged to exclude YRA sentencing for armed robbery. See YRA Report at 26 (statement of City Administrator/Deputy Mayor Thomas Downs urging the Council to add armed robbery to the "current exemption of murder").

There is further support for that interpretation in the fact that the YRA was enacted to "fill the void created by congressional repeal of the Federal Youth Corrections Act." YRA Report at 2. Our case law applying the Federal Youth Corrections Act had reasoned that it was "logical to assume that had Congress intended the exclusion of first-degree murder from [Federal] Youth [Corrections] Act coverage, this intent would have been expressed at the time the provisions of the Act" became effective in the District of Columbia. Stokes , 365 A.2d at 618 (holding, in agreement with United States v. Howard , 449 F.2d 1086 (D.C. Cir. 1971), that a defendant convicted of first-degree felony murder before reaching age twenty-two was eligible to receive a Federal Youth Corrections Act sentence). In light of that history, to which the Committee on the Judiciary alluded in the YRA Report (YRA Report at 3), it seems reasonable to expect that in adopting the YRA, the Council would have taken caution to make it express that first-time crime-of-violence-while-armed youth offenders are ineligible for the alternative sentencing options of the YRA (and are eligible only for sentence expungement pursuant to the YRA) if that is what it intended.

Thomas v. United States , 602 A.2d 647, 652 (D.C. 1992) (stating that § 22-4504 (b)"leaves the sentencing judge no discretion to tailor the sentence to either the degree of the harm caused by the perpetrator or any other factor " (emphasis added) ).

In addition, nothing in the language of the YRA itself suggests that the sentencing discretion it affords to trial judges generally supersedes statutory mandatory-minimum sentences. The YRA declares that the trial court "may suspend the imposition or execution of sentence and place the youth offender on probation." D.C. Code § 24-903 (a)(1). Section 24-903 (a)(1) is not unlike D.C. Code § 16-710 (a) (2012 Repl.), which, describing a trial court's general discretion in sentencing, states broadly, in pertinent part that:
[I]n criminal cases in the Superior Court of the District of Columbia, the court may, upon conviction, suspend the imposition of sentence or impose sentence and suspend the execution thereof, or impose sentence and suspend the execution of a portion thereof, for such time and upon such terms as it deems best, if it appears to the satisfaction of the court that the ends of justice and the best interest of the public and of the defendant would be served thereby. In each case of the imposition of sentence and the suspension of the execution thereof, or the imposition of sentence and the suspension of the execution of a portion thereof, the court may place the defendant on probation under the control and supervision of a probation officer.
We held in Moorer v. United States , 868 A.2d 137 (D.C. 2005), that the sentencing discretion conferred by § 16-710 (a)"cannot be applied in carjacking cases." Id. at 144-45 (concluding that the carjacking statute "require[s] a person convicted [pursuant to it] to spend at least seven years behind bars, in all cases, with no exceptions ." (emphasis added) ). From that holding, and from the similarity between § 16-710 (a) and the YRA provision codified at § 24-903 (a)(1), it seems to follow that § 24-903 (a)(1) is not a sui generis provision that by its very language trumps any mandatory-minimum sentence.

Note, too, that we have declined to treat PFCV and a while-armed-with-a pistol offense as "the same offense" for double jeopardy purposes. Thomas , 602 A.2d at 650-55.

The Council has from time to time indicated awareness of the issue of whether mandatory-minimum sentences apply to youth offenders, but it has not spoken to the issue unequivocally as it affects the broad class of offenders eligible for YRA benefits. For example, the Committee Report to D.C. Law 12-165, the "Truth in Sentencing Amendment Act of 1998," states that the effect of the provision eventually codified at D.C. Code § 24-403.01 (c)(1) (providing for sentences "for a definite term, which shall not exceed the maximum term allowed by law or be less than any minimum term required by law") is to "preserve[ ] existing maxima and minima" and "not require or result in any extension or application of mandatory minimum sentences to categories of offenders, including persons sentenced under the Youth Rehabilitation Act, to which the mandatory minima do not apply currently under District of Columbia law." Committee on the Judiciary, Report on Bill 12-523 at 9 (Feb. 25, 1998). The reference in the legislative history to preserving the status quo with respect to "existing maxima and minima" does not answer the question whether any minima already applied to offenders sentenced under the YRA.
Likewise, in the CYJAA ("[n]otwithstanding any other provision of law, if the person committed the offense for which he or she is being sentenced under this section while under 18 years of age ... [t]he court may issue a sentence less than the minimum term otherwise required by law," D.C. Code § 24-403.01 (c)(2)(A) ), the Council's use of the imprecise term "otherwise required by law" provides no insight into whether the Council believed that youth offenders eligible for rehabilitation under the YRA were theretofore generally subject to "minimum term[s] ... required by law" (or into whether the Council believed that youth offenders who are over age 18 have been and remain generally subject to "minimum term[s] ... required by law").
The foregoing provisions do not assist us in answering the question whether appellant was subject to a mandatory-minimum sentence upon his conviction of PFCV.

We also are not persuaded that had the trial court understood it was not bound by a mandatory minimum, it necessarily would have imposed probation or a lighter sentence. The court did comment that "in some respect[,] maybe the mandatory minimum is a little too harsh[.]" But the court also began its remarks by saying that it "d[id]n't see any value going above the mandatory minimum in this case." That remark suggests that the court may have been primarily focused on whether, on the record presented, a sentence greater than the mandatory minimum was warranted. It is also notable that the court sentenced appellant to a "guideline compliant" term of thirty months on the ADW charge, thus exceeding the twenty-four month term urged by the government. That suggests that the court did not think that either non-incarceration or a low-end sentencing-guideline-compliant sentence was warranted-a view that we can surmise the court held as to all of the offenses of which appellant was convicted.

See, e.g ., United States v. Gjini , 419 Fed.Appx. 4, 6 (2d Cir. 2011) ("The district court indisputably erred in imposing a 320-month sentence [for a witness retaliation conviction]. However, because Gjuraj received a concurrent 320-month sentence on the narcotics distribution charge, Gjuraj fails to show that the error affected his substantial rights or the fairness, integrity or public reputation of judicial proceedings." (internal quotation marks omitted) ); United States v. Mitchell , 398 Fed.Appx. 159, 163-64 (6th Cir. 2010) (explaining that assumed sentencing error as to three counts "did not seriously affect the fairness of the judicial proceedings" "because the district court sentenced Mitchell to concurrent terms on all four counts").